(Nos. 29609, 29610.—

BLACK HAWK MOTOR TRANSIT COMPANY *et al.*, Appellants, *vs.* ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.— ILLINOIS HIGHWAY TRANSPORTATION COMPANY, Appellant, *vs.* ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

*Opinion filed November 20, 1947—Rehearing denied Jan. 15, 1948.*

REYNOLDS M. EVERETT, of Galva, and MEYER & FRANK-LIN, of Champaign, for appellant Black Hawk Motor Transit Company; HAROLD M. OLSEN, and A. M. FITZ-GERALD, both of Springfield, for appellant Illinois High-

way Transportation Company; and GRAHAM & GRAHAM, (HUGH J. GRAHAM, JR., of counsel,) both of Springfield, for appellant Illinois Terminal Railroad Company.

RICHARD F. DUNN, of Bloomington, and KELLER & KELLER, and RENO & WRIGHT, both of Champaign, for appellee Illini Coach Company.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

Cause No. 29609 is an appeal from a judgment entered in the circuit court of Champaign County, and No. 29610 is from a judgment of the circuit court of De Witt County. The similarity of issues permitted consolidation of the two causes for opinion. Both originated before the Illinois Commerce Commission and were heard in the circuit courts on appeal from the orders of the commission. In general the issue was as to whether the public convenience and necessity required additional passenger service between Decatur and Bloomington and Decatur and Urbana, each serving intermediate points along the routes proposed. If the commission found that such additional service was necessary, then the question was as to which of four public utilities should be permitted to furnish such service. The four utilities interested have appeared on this appeal and each has filed a brief. They are as follows: Black Hawk Motor Transit Company, hereinafter referred to as Black Hawk; Illini Coach Company, to be known as Illini; Illinois Highway Transportation Company designated as Highway, and Illinois Terminal Railroad Company will be referred to as the Terminal. The three utilities first named carry passengers for hire by means of motor busses. The Terminal owns and operates electrically driven coaches and trains.

The area for which passenger service is involved is triangular in shape with the termini of Decatur, Blooming-

ton and Urbana serving as the points of the triangle. One route extends from Decatur to Bloomington, a distance of approximately 47 miles, the other is from Decatur to Urbana, a distance of about 54 miles. The third side of the triangle, being the distance of about 50 miles between Bloomington, Champaign and Urbana is not involved in any applications for certificates of public convenience and necessity.

When these proceedings started in the spring of 1942, the utilities named were operating as common carriers of passengers under certificates which permitted them to operate in some part of what may be termed the Decatur-Bloomington-Urbana area. Black Hawk held a certificate to operate between Champaign and Clinton, Illini had two certificates, one to operate between Urbana, Tolona and Champaign, and the other between Peoria and Bloomington. Highway held a certificate to operate between Peoria and Decatur *via* Lincoln. The Terminal's right of way over which it operated its passenger coaches paralleled for the most part the public highways over which the bus companies proposed to operate. Prior to 1942, Illini had been operating its bus line between Peoria and Champaign *via* Bloomington under a certificate containing restrictions as to where it might receive and discharge passengers. On March 14, 1942, it applied for a certificate, which, if it had been granted, would have removed the restrictions contained in its former certificate. Such application was docketed by the commission as No. 30580. Before a hearing was had on such application, Illini on April 16, filed another application asking permission to operate its busses between Decatur and Champaign *via* Monticello, and Decatur and Bloomington *via* Clinton. This was docketed as No. 30684.

On April 16, 1942, Black Hawk applied for a certificate to operate between Decatur and Urbana with a provision for an alternate route for a part of the distance between

said points, the details of which are not material to this case. It was docketed No. 30687. On May 6, Black Hawk amended its application to include a request·for a certificate to operate between Decatur and Bloomington *via* Clinton. It was docketed No. 30740. The latter docket number was carried on the commission records as one of the consolidated actions. It is referred to in the order appealed from. However, the application was denied June 25, 1942, and no appeal was taken from such decision.

On April 22, 1942, Highway applied for a certificate of public convenience and necessity to operate its busses between Decatur and Bloomington *via* Clinton. It was docketed No. 30701.

The bus companies filing the foregoing applications were named as respondents in all applications except the one they had filed. Terminal and several other utilities, associations and labor organizations were also named as respondents to the several applications. Causes No. 30684, No. 30687, No. 30740 and No. 30701 were heard together before examiners of the commission. The hearings started on June 15 and ended June 24. On the latter date each case was marked "Heard and taken." On June 25 the commission denied Illini's application in No. 30684, to operate between Decatur and Champaign, and Decatur and Bloomington. The same day an order was entered denying Black Hawk's' application in No. 30740 to operate between Decatur and Bloomington. The following day two orders were entered, one in No. 30687 granting a certificate of convenience and necessity to Black Hawk to operate its busses between Decatur and Urbana, and the other was entered in case No. 30701 granting Highway a certificate to operate its busses between Decatur and Bloomington *via* Clinton.

Entries appearing on the records of the commission show that a certified copy of the order denying Illini's

application in No. 30684 was mailed to the parties in interest July 15, 1942. A certified copy of the order in Black Hawk's cause No. 30687 was mailed July 8 and a certified copy of the order in Highway's case No. 30701 was mailed July 3. The transcripts of evidence taken in the several cases before the examiner were filed with the commission on June 29, 1942. When the commission entered the order of July 14, 1942, hereinafter referred to, no petitions for rehearing had been filed in any of the cases.

On July 9, 1942, the Terminal filed a petition praying that the commission permit it to abandon the operation of its passenger train service between Peoria and Decatur and between Decatur and Danville *via* Urbana and Champaign. This application became No. 30910. It was alleged in the petition that the revenue received by Terminal from its passenger service had not been sufficient to pay the costs of operating the passenger trains and that therefore continued operation could not be justified from a revenue standpoint. It was further alleged that the territory which petitioner had been serving would, in the future, be adequately served by motor bus carriers under certificates issued in No. 30580 to Illini between Peoria and Bloomington, in No. 30687 to Black Hawk between Decatur and Urbana, and No. 30701 to Highway between Decatur and Bloomington.

On July 14, without written complaint and acting on its own motion, the commission entered the following order on its docket in Illini's case No. 30684. "At the conference of the commission case reopened and set for hearing September 8, 1942 at Springfield." On July 16, a further entry was made that "All parties of interest notified by letter of hearing set for September 8, 1942." The same entries were made in Black Hawk's case No. 30687 and Highway's No. 30701. Nothing pertinent to our in-

quiry occurred on September 8, but on September 10 the following causes were consolidated: Terminal's petition to abandon, No. 30910; Illini's application to remove restrictions on its operations, No. 30580; Illini's application No. 30684 for certificate to operate between Decatur and Bloomington and Decatur and Urbana; and Black Hawk's case No. 30687 in which it had been granted a certificate to operate between Decatur and Urbana, and its application in No. 30740 in which it asked for certificate to operate between Decatur and Bloomington but was denied, and Highway's case No. 30701 in which it held a certificate to operate between Decatur and Bloomington. Thereafter evidence was taken in the consolidated action but the major portion of it related to Terminal's application in No. 30910 to abandon. After the evidence in such cause had been completed, and on September 29, 1942, the commission denied Terminal's petition to abandon. No petition for rehearing was filed and the order was permitted to become final. Nothing contained in cause No. 30910 is involved on this appeal. However, Terminal continued as a party in the hearings before the examiner, and later before the commission, and has remained in the case to the present time for the purpose of resisting the issuance of certificates to any of the three bus companies. As previously stated it rests its case on the ground that it was a carrier in the field and that there were not sufficient findings of fact to support the orders that were entered authorizing additional service.

A cease-and-desist order was entered on September 29, 1942, which ordered that Illini cease operation under the order entered in No. 30580, wherein it was permitted to remove the restrictions on its operations between Peoria and Bloomington. It was ordered that in Black Hawk's cause No. 30687 the applicant cease and desist from operating its busses between Decatur and Urbana. A similar order was entered prohibiting Highway from operating

under the certificate granted to it to operate between De-
catur and Bloomington in No. 30701.

On October 15, 1942, on application of Black Hawk
and Highway, the circuit court of Sangamon County issued
a temporary injunction enjoining the commission from
enforcing its cease-and-desist order. From that time the
two bus companies operated under the protection of the
injunction until it was dissolved June 19, 1945, nine days
before the order appealed from was entered.

The causes remaining before the commission were set
for hearing several times between the date of the stay
order September 29, 1942, and July 7, 1943, but no evi-
dence was taken on any of those dates. On the latter date,
the commission ordered that No. 30580, No. 30684, No.
30687, No. 30701, No. 30740 and No. 30648 be consoli-
dated. Further entry of that date is that at the conference
of the commission the consolidated cases were reopened by
the commission on its own motion and cases set for hear-
ing July 20, 1943. It appears that notice of the action
taken was mailed to all parties interested on July 9, 1943.

When the consolidated action was called for hearing
on July 20, Black Hawk and Highway filed their separate
special appearances limited to raising a question as to the
power of the commission to reopen the cases for further
evidence under the circumstances stated. It was alleged
that the order of June 25, 1942, entered in No. 30684
denying Illini's application, had become final and since
Illini had not filed a petition for rehearing within thirty
days, the order was beyond the jurisdiction of the com-
mission to reopen. Another ground which is limited to
Black Hawk's appearance was that the order of June 26,
1942, entered in No. 30687 granting it a certificate, had
become final and that the commission had acted without
authority in reopening the case. Black Hawk's special
appearance contained an allegation that no findings had
been made by the commission which were different from

the findings it made in the order of June 26 or that the facts found in the order of June 26 were erroneous or that there had been a subsequent change of conditions, or that the original order was founded on a mistake of law. Both Black Hawk and Highway requested a ruling by the commission on the effect of their special appearances and all the parties submitted briefs in support of their respective contentions. At the first hearing thereafter, September 21, 1943, which was for the purpose of taking evidence, the examiner announced that the question of jurisdiction raised by the special appearance would be taken with the case.

Evidence was taken in the consolidated actions beginning September 21, 1943, and concluding on June 7, 1944. On the latter date the cases were marked "Heard and taken." Briefs were submitted soon thereafter and on June 28, 1945, the commission entered the orders parts of which are the subject of appeal in this case. The commission rejected the jurisdictional questions raised by Black Hawk and Highway's special appearance. It rescinded the order of June 25, 1942, entered in No. 30684 denying Illini's application for certificate, and in lieu thereof entered an order directing the issuance of a certificate to Illini to operate its busses between Decatur and Bloomington *via* Clinton, and between Decatur and Urbana *via* Monticello. The order of June 26, 1942, in No. 30687, which granted Black Hawk a certificate to operate between Decatur and Urbana, was rescinded and likewise, in No. 30701, Highway's certificate to operate between Decatur and Bloomington was also rescinded.

The petitions for rehearing filed by Black Hawk, Highway and Terminal were all denied.

Black Hawk appealed to the circuit court of Champaign County from the order entered in No. 30684 which granted Illini's certificate, and it also appealed to that court

from the order entered in No. 30687 which had rescinded its certificate issued June 26, 1942. Highway appealed to the circuit court of De Witt County from the order in No. 30684 and from the order in No. 30701 which rescinded its certificate. There was a consolidation of the cases in the circuit court but separate judgments were entered and separate appeals were taken. The judgments entered in each case sustained the orders of the commission.

Black Hawk and Highway contend that the orders of June 26, 1942, granting them their respective certificates, and the order of June 25, 1942, denying Illini's application for a certificate, were clothed with a finality that placed them beyond the power of the commission to rescind except by strict compliance with sections 64, 65 and 67 of the Public Utilities Act. (Ill. Rev. Stat. 1945, chap. 111⅔, pars. 68, 69, 71.) It is contended that the requirements of those sections were not complied with. From this it is urged that the following orders were a nullity: the order of July 14, 1942, the order of July 9, 1943, reopening the cases, the cease-and-desist order of September 29, 1942, and that part of the final order which rescinded the several orders as enumerated. As an alternative to the jurisdictional defect, Black Hawk and Highway contend that the order of June 28, 1945, does not contain findings of fact sufficient to support the orders made therein as they pertain to Illini's case No. 30684, Black Hawk's No. 30687 and Highway's No. 30701.

In answer to the charge that the commission acted without statutory power, Illini invokes section 55 as containing an express delegation of power authorizing the commission to enter the orders and take the action complained of. Illini also contends that during the statutory period of thirty days allowed for the filing of petitions for rehearing the commission has the power to reopen the cases on its own motion. In regard to Black Hawk's and High-

way's alternative contention, Illini joins issue by referring to certain findings which it claims are sufficient to support the order of June 28, 1945.

Terminal's position is of a different character than any of those made by the bus companies. It contends it was a carrier in the field when the bus companies applied for certificates and that the commission erred in granting certificates to them without first finding that the service furnished by Terminal was inadequate or that it was not capable of furnishing the transportation the territory needed.

The Commerce Commission derives its power from the statute and has no authority except such as is thereby expressly conferred upon it. (*Lowden* v. *Commerce Com.* 376 Ill. 225; *Lambdin* v. *Commerce Com. ex rel. Assumption Mutual Tel. Co.* 352 Ill. 104.) All the bus companies accept this fundamental proposition but differ as to the power conferred by certain sections of the act.

An established principle of statutory construction is that the legislative intention must be deduced from the entire statute and every material part of it taken and construed together. (*Karlson* v. *Murphy,* 387 Ill. 436; *Interstate Water Co.* v. *City of Danville,* 379 Ill. 41.) Another cardinal rule of construction is that words of a statute shall be given their common and popular meaning unless to do so defeats the manifest intent of the General Assembly. *Barnes* v. *City of Chicago,* 323 Ill. 203; *Wheeler* v. *Wheeler,* 134 Ill. 522.

Counsel entertain different views as to the power the commission may exercise over its certificates of public convenience and necessity under section 55. (Ill. Rev. Stat. 1945, chap. 111⅔, par. 56.) The section prohibits any public utility from starting operations before it obtains a certificate from the commission. Subparagraph 4 of the section provides that "Such certificates may be altered or modified by the Commission, upon its own motion or upon

application by the person or corporation affected." The statute is silent as to the time following the issuance of the certificate within which the power may be exercised. Nor does it contain any requirement of notice, opportunity for hearing or the filing of formal pleadings to raise issues as to the sufficiency of the certificate or the order granting it. The absence of such procedural requirement has a bearing on the extent or scope of the alteration or modification that may be made. The power conferred by section 55 to alter or modify should be compared with the power conferred by section 67 (par. 71) to rescind, alter or amend. The power conferred in the latter section is more comprehensive than that granted by the former statute, for in the latter the power of rescission, alteration or amendment applies to any rule, regulation, order or decision of the commission while in section 55 the power to alter or modify is limited to certificates of public convenience and necessity.

The power to rescind a certificate is greater in extent and scope than the power to alter or modify. The words "altered" or "modified" as used in section 55 are descriptive of the power which the commission may exercise over certificates it has issued. In the search of the section for the extent of the power, the words "altered" or "modified" should be given their usual and popular meaning. Webster's Unabridged Dictionary defines "alter" as meaning "to change in one or more respects, but not entirely; to make [a thing] different without changing it into something else." The word "modify" is defined as meaning "to change somewhat the form or qualities of; to alter somewhat." The word "rescind" means to abrogate, annul, to vacate or set aside. An exercise of the power to rescind may be more destructive of the prior certificate than an exercise of a power to alter or modify. In the light of the difference between the powers conferred by the respective statutes, the General Assembly made provision

for procedural requirements in section 67 which are not included in section 55. The power to rescind, alter, or amend under section 67 can be exercised only when there is "opportunity to be heard as provided in the case of complaints." Such requirement relates back to section 64, (par. 68) which deals with hearings on complaints. It provides that a written complaint shall be filed with the commission either on its own motion or by any person or corporation. It requires notice to interested parties, an opportunity for hearing and findings of fact sufficient to support the order that is finally entered. Thus by the two sections the General Assembly has preserved a distinction between the extent of the powers the commission may exercise by not requiring complaint, notice, opportunity for hearing and findings of fact in cases where the certificate is to be altered or modified, while providing for such requirements where there is to be a hearing as to the rescission of a certificate, order or decision. The power granted in section 55 to alter or modify certificates is restricted to such alterations and modifications as are of a minor character and which do not affect substantial rights of the persons or corporation holding the certificate or the rights of any other person or utility. A public utility acquires an interest in a certificate granted to it and is authorized to act according to its terms. If the proposed action of the commission is to lead to a rescission of the certificate, it is obvious that the exercise of the power of rescission must meet with the rules of due process. The requirement of section 67 that there be opportunity to be heard as in case of complaint and the procedural requirements of the section on complaint (section 64) accord with the rules of due process as understood and applied to public utilities.

The orders which directed the granting of certificates to Black Hawk and Highway also directed that each of them file their schedules of fare and time to be used in

the proposed routes and to begin operations at once. The evidence shows that they began operating their busses within three days after the certificates were issued. The final order which rescinded those certificates, entered June 28, 1945, refers to the conditions on which it is said the certificates were issued. It is stated in the final order that there was an understanding with Black Hawk and Highway whereby they would not take any vested interest in their respective certificates. In this connection our attention is also directed to two paragraphs contained in the order. One paragraph reserved unto the commission "its full powers undiminished in any respect to granting such other or additional certificates whether for the same route or territory or parts thereof, as in the judgment of the commission, public interest, convenience and necessity requires." The other paragraph provided that the commission retained jurisdiction of the subject matter and of the parties for the purpose of issuing such further order or orders as it might deem necessary. Later in this opinion we conclude that the Public Utilities Act vests a continuing jurisdiction in the Commerce Commission over public utilities, its orders, decisions, rules and regulations, but that such jurisdiction can be exercised only in the manner prescribed by statute. We are convinced that, if the statute does not authorize the continuing jurisdiction of the commission, it cannot be preserved by a reservation such as the ones quoted in the order. In short, the paragraphs of the order referred to did not create a power in the commission that was not conferred by statute. It is not necessary in this case to determine whether a public utility would be estopped to question a condition that a certificate granted to it would not create any vested interest, for the reason that the record of the commission made at the time the certificates were issued does not disclose that any such agreement was entered into. The reservations of jurisdiction contained in the orders did not supply the

commission with power to take action leading to a rescission of the certificate except by complying with the procedural requirements of section 67.

Illini refers to *Illinois Iowa Power Co.* v. *Rhein,* 369 Ill. 584, as controlling on the power the commission may exercise over its certificates by virtue of subparagraph 4 of section 55. In that case the utility filed an application for certificate and it was given a docket number. A hearing was had and a certificate granted. Later the order was vacated and after further hearing a new order entered and certificate issued which was the same as the previous one. A petition for rehearing filed on behalf of the utility was pending when the commission reopened the cause on its own motion. This occurred on February 17, 1937. No further action was taken in said cause. On March 8, the same utility filed a second application for a certificate. A hearing was had and certificate granted. The order and certificate entered in the latter case formed the basis for an eminent domain proceeding which was the case that came to this court. It was contended that since the commission had granted a certificate on the first application, it had no power to consider the second and that, therefore, the utility was without authority to condemn property for right-of-way purposes under the certificate issued in the later cause. The facts in that case and the present one are not the same. The question there was as to the authority of the commission to award a certificate in the second cause. It was stated in the opinion that the utility had filed a petition for rehearing and that such action, with the action of the commission in setting the order aside on its own motion, had the effect of suspending the first proceeding. We do not find anything in that case in conflict with the construction given to subparagraph 4 of section 55.

Section 67 (par. 71) provides: "Anything in this act to the contrary notwithstanding, the commission may at

any time, upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any rule, regulation, order or decision made by it. Any order rescinding, altering, or amending a prior rule, regulation, order or decision shall, when served upon the public utility affected, have the same effect as is herein provided for original rules, regulations, orders or decisions."

This brings us to a consideration of the effect to be given the following orders of the commission: the orders entered July 14, 1942, and July 9, 1943, reopening the cases and setting time for hearing; the cease-and-desist order of September 29, 1942, and the order of June 28, 1945. It will be recalled that the latter order rescinded the order entered June 25, 1942, in No. 30684, denying Illini's application for certificate, that it rescinded the order of June 26, 1942, entered in No. 30687, wherein Black Hawk was granted a certificate to operate between Decatur and Urbana, and that it rescinded the order of June 26, 1942, entered in No. 30701 wherein Highway was granted a certificate to operate between Decatur and Bloomington. After the rescission of the orders specified, the order of June 28, 1945, directed a certificate to issue to Illini permitting it to operate on the routes and between the same termini which had been covered by Black Hawk's and Highway's certificates.

The extent of the power of control of public utilities which the act confers on the commission and the general purposes of the act as expressed in the various provisions leaves no room to doubt but what the legislature intended that the Commerce Commission should have a continuing jurisdiction over its rules, regulations, orders and decisions and that while acting within the scope of such power it may, if the facts warrant, rescind a certificate previously issued by it. We cannot attach the "conclusiveness" to the orders of the commission for which Black Hawk and

Highway contend. The orders granting a certificate become final at time of entry for the computation of time within which petition for rehearing shall be filed, and, if denied, for purposes of appeal, but they never become so conclusive as to prevent the commission from rescinding them if the facts warrant and the power is exercised in accordance with the statute. On the other hand, we cannot agree to the contention that during the thirty-day statutory period allowed for filing petitions for rehearing the commission possesses an inherent power over its orders and decisions which it may exercise independently of statute. What the commission may do in the scope of the power conferred by statute is not to be confused with an inherent power such as attaches to courts of record. Any action taken by the commission leading to the rescission of an order, decision or certificate, whether taken during the thirty-day statutory period or thereafter, must be exercised in accord with the requirements of section 67.

The course the cases followed after they were reopened indicates that at the time of the entry of such order the commission considered that Terminal's petition to abandon passenger service in this area presented questions the outcome of which might have an important bearing on the passenger transportation problems of that territory. Following the reopening orders, evidence was taken on Terminal's petition to abandon. During the period taken for such hearings it does not appear that any action of any moment was taken in cases No. 30580, No. 30684, No. 30687 or No. 30701. During the period Black Hawk and Highway continued to operate their busses pursuant to the authority of the certificates issued June 26 before. This indicates that the reopening order of July 14, 1942, was entered to abide the disposition of Terminal's petition to abandon.

The questions presented on Terminal's petition arose after the certificates had been issued to Black Hawk and

Highway. It presented matters beyond the scope of the power of the commission to alter or modify a certificate under section 55, but if action on Terminal's petition should lead to a rescission of the other certificates, the commission had the power by virtue of section 67.

The power to reopen being delegated by statute, the question arises as to whether the facts warranted such action. That was a question for the commission in the first instance and under the facts shown the commission's conclusions will not be disturbed. We have approved the order of the commission reopening the case on its own motion but, as will hereinafter be shown, it did not have the power to proceed in the manner that it did.

Black Hawk and Highway contend that the commission did not acquire jurisdiction of them to enter the order of July 14, 1942. It is true that the reopening order was entered without notice but, after it had been entered, notice was given to the parties interested. In this connection it should be noted that after the reopening orders were entered the commission proceeded with hearings before an examiner on Terminal's petition to abandon. Black Hawk and Highway appeared by counsel at those hearings and participated in the cross-examination of the witnesses. They did not file their special and limited appearance until after Terminal's petition had been denied, so that during the hearings on Terminal's petition they submitted themselves to the jurisdiction of the commission and, since the commission had the power under the circumstances presented by Terminal's petition to reopen the case, the proceeding was regular and Black Hawk and Highway were before the commission.

Terminal's petition to abandon was denied September 29, 1942, and insofar as it had furnished grounds for the commission's order reopening the cases, it is certain that it ceased to be a supporting factor when it was denied. It appears that on and after September 29, 1942, when

Terminal's petition was denied, the reopening orders took on a different aspect and the hearings thereafter appear to have been for the purpose of determining whether Black Hawk and Highway should continue to furnish service under their certificates or their certificates should be rescinded and new ones issued to Illini. The same day that Terminal's petition to abandon was denied, the commission issued the cease-and-desist order. This was preliminary to the order of June 28, 1945, rescinding the certificates.

About nine months after the cease-and-desist orders were entered the commission ordered a consolidation of the cases involved here and certain other cases involving collateral matters not material to this review. Immediately after the order of consolidation was entered and on July 9, 1943, the commission entered a second reopening order in the consolidated case. If the second reopening order was entered with a view of trying the cases on the issue as to whether Black Hawk and Highway should retain their certificates and Illini should gain the certificates, then it is clear that the final order to be entered might lead to a rescission of the certificates. The character of the hearings that followed and the evidence introduced supports the view that the commission intended that such issues should be tried.

As stated, the power of the commission to rescind a certificate is conferred by section 67, but it is provided that such power shall be exercised only after "opportunity to be heard as in case of complaints." Reference has been made to section 64 (par. 68) which prescribes the procedure to be followed in the case of complaints. It requires that a complaint in writing be filed with the commission "setting forth any act or things done or omitted to be done in violation, or claimed to be in violation, of any provision of this act, or of any order or rule of the commission." It requires that notice shall be given the person or corporation complained of by service with a

copy of the complaint accompanying such notice. The defendant shall also be notified to answer and satisfy the complaint within such reasonable time as the commission shall fix.

The statutory provisions in reference to the allegations of the complaint restrict the matters which may be the subject of complaint to acts or things done or omitted to be done in violation or alleged violation of provisions of the act and orders or rules of the commission. In a case such as this where an order had been entered granting a utility a certificate permitting it to furnish a public service, the subject of complaint would necessarily be limited to the violations specified in the statute.

In *Alton and Southern Railroad* v. *Commerce Com. ex rel. Perry Coal Co.* 316 Ill. 625, the necessity of there being a written complaint in proceedings under section 64 and the relation the findings of the commission should bear to the allegation of the complaint were expressed as follows: "This all contemplated that hearings of the commission and orders entered in such matters shall be limited and circumscribed by the complaint filed. While the commission should be liberal in construing the pleadings before it, the statute requires that carriers shall be notified of the complaint which they are required to answer, and though no particular form is prescribed there must be a statement of the thing which is claimed to be wrong, sufficiently plain to put the carrier upon its defense. The evidence should be limited by the issue made. The Commerce Commission cannot enter a valid order which is broader than the written complaint filed in the case."

In *Central Northwest Business Men's Ass'n* v. *Commerce Com.* 337 Ill. 149, the question submitted was as to whether a proceeding to rescind an order of the commission, as was permissible under section 67, required findings of fact to support the order the same as in proceedings under section 65. It was held that the requirement as to

findings under section 65 was applicable to an order rescinding a prior order. In discussing the findings of fact necessary to support an order rescinding a prior order it was said: "Before the commission could lawfully rescind its order of January 26, it was necessary that it make a finding of facts different from the finding of facts on which the original order was entered, and that the facts as found in the original order were erroneous, or that since the entry thereof conditions had changed to such an extent that the facts and conditions as they existed at the time of the rescinding order were different, or that a mistake as to the law had been made, and enter findings of facts applicable to the then conditions."

The procedure followed by the commission after Terminal's petition was denied September 29, 1942, did not conform to the requirements of section 67. It is contended that the special and limited appearance of Black Hawk and Highway was ineffectual to preserve to said companies the right to raise the jurisdictional question. It is not necessary to determine the effect of the special appearance, for even though it be conceded the commission had jurisdiction over the three bus companies and had the power under section 67 to rescind the prior certificates and the order denying Illini's application, yet we have a case where the commission has proceeded in a manner contrary to statute and therefore has exceeded its statutory power.

The many recitals of fact and the conclusion contained in the final order of June 28, 1945, indicate that the commission perceived that the exercise of the power of rescission might be questioned on jurisdictional grounds and to answer the contentions that might be made inserted a statement to demonstrate that there was a mistake of fact in issuing the certificates to Black Hawk and Highway and in denying Illini's application. Unquestionably the commission has the power to correct minor mistakes in its

certificates under section 55, but if the mistake is such that when prosecuted to its ultimate conclusion it may be necessary to rescind a prior order, then the power must be exercised in accordance with section 67.

There is a finding in the order of June 28, 1945, to the effect that the orders of June 25, 1942, denying Illini's application and the orders of June 26, 1942, granting Black Hawk and Highway their certificates, were made on the recommendation of the commissioner's examiners, and that the orders were entered without an examination of the evidence and a full understanding of the facts. It is observed that the orders granting the certificates contained an express finding that Black Hawk and Highway each had "sufficient facilities, organization, experience and financial resources to enable it to furnish the proposed service." It will be noted that Black Hawk and Highway furnished service under their respective certificates from June 28, 1942, to within a few days of the entry of the order of June 28, 1945, and yet there is no finding in the latter order that either of said companies had not furnished efficient and suitable passenger service during that period. Indeed, the order of June 28 contains a statement that the financial resources of Highway had improved since June 26, 1942.

The order of June 28, 1945, contains several paragraphs in reference to the possibilities of the effect that orders of the Office of Defense Transportation might have on an exercise of the commission's powers. It was understood that such orders would, if promulgated, become effective July 1, 1942, and this fact is urged as another reason necessitating early action on the granting of the certificates to Black Hawk and Highway. The record discloses that the transcript of evidence taken preceding the orders of June 25 and June 26 was filed with the commission on June 29 and it thereby had opportunity to examine such evidence before the effective date of July 1, 1942. As

stated, the record indicates that the order of July 14, 1942, reopening the cases, was prompted by the conditions that might arise following a hearing on Terminal's application to abandon. The reopening order contains no reference to any mistake the commission had made in adopting the recommendation of its examiner, or that the certificates were issued without full consideration in order that they might obtain a priority over the orders of the Office of Defense Transportation. The cease-and-desist order of September 29, 1942, made no reference to such facts. The cease-and-desist order refers to the certificates that had been issued, the order denying Illini's application, and then followed with the statement that "subsequent to the date of the entry of said orders, as aforesaid, certain information has been presented to the commission touching upon the question of the propriety, advisability and necessity of the continuance of the services of the several companies hereinafter named, in accordance with the said orders so heretofore issued by this commission," and then continues that by reason of the information so brought to the attention of the commission and the matters and things referred to in the order denying Terminal's application it was deemed advisable to enter the cease-and-desist order. The source of the information on which the commission was acting at that time was not found in any evidence that had been taken subsequent to the reopening of the cases. The attention of the commission had been confined to hearings on Terminal's petition to abandon. What the information was has not been pointed out and we are unable to find anything that gives support to the commission's doubt as to the propriety of permitting the prior orders and certificates to continue in full force. The statement in the order of June 28, 1945, that the commission had made a mistake by following its examiners' recommendations is not supported by the record.

In considering the orders and findings of the commission we have granted them the liberality to which they are entitled, but we find that the commission's order of June 28, 1945, cannot be sustained insofar as it rescinds the order entered in Illini's case No. 30684, in Black Hawk's No. 30687, and Highway's No. 30701.

We have given full consideration to the points raised by Terminal's brief but, under the views expressed, there is no basis on which such points can be considered. The conclusion reached cancels Illini's certificate and reinstates Black Hawk's and Highway's certificates. Terminal took no action to preserve its right to have a review of the orders of June 26, 1942, by filing a petition for rehearing. Nothing contained herein shall be construed as a restriction on the institution of any proper proceeding in accordance with the statute.

The judgments of the circuit courts are reversed and the causes are remanded to said courts, to be by them remanded to the commission with directions to set aside the order of June 28, 1945, in accord with the views expressed.

*Reversed and remanded, with directions.*