(No. 40738.—

UNION ELECTRIC COMPANY, Appellant, *vs.* THE ILLINOIS
COMMERCE COMMISSION *et al.,* Appellees.

*Opinion filed March 28, 1968.*

KENNETH J. SCHUESSLER and POPE & DRIEMEYER, both of East St. Louis, and JOSEPH E. BIRK, of St. Louis, Missouri, for appellant.

NAFZIGER & OTTEN, of Springfield, (ELMER NAFZIGER, of counsel,) for appellees.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal from an order of the circuit court of Jersey County, affirming an order of the Illinois Commerce Commission. The order of the Commission entered on June 22, 1966, purported to amend or modify a certificate of convenience and necessity, previously granted to Union Electric Company to furnish natural gas service to an area in Jersey County, by reducing the area and granting a certificate of convenience and necessity to Central Illinois Public Service Company to serve, *inter alia,* the major part of the area previously allocated to Union. From this order Union appeals directly to this court.

Both Union Electric Company and Central Illinois Public Service Company are substantial public utilities operating in Illinois furnishing both gas and electric service. On August 14, 1965, Union filed a verified application with the Commission in Docket No. 51686, seeking a certificate of public convenience and necessity to construct, operate and maintain a six-inch gas feeder main, approximately 10.9 miles in length, from Clifton Terrace in Madison County to the city of Grafton in Jersey County, together with necessary distribution lines and systems for providing gas service to the public in the area generally referred to as the Elsah-Grafton area and environs, including The Principia College, in Jersey County, which area is contiguous to Union's present gas service area.

After due notice to Central Illinois Public Service Company and Illinois Power Company, the Commission

held a hearing on Union's application in Docket No. 51686. On the day of the hearing, Central Illinois Public Service Company (hereinafter referred to as CIPS) filed a motion to intervene. Union objected on the grounds that CIPS did not seek any affirmative relief and that the intervening petition appeared to be a negative attempt to block Union's affirmative proposal to render gas service in the Elsah-Grafton area. The motion was taken under advisement and the hearing was continued to October 19, 1965.

On September 22, 1965, the Commission denied CIPS's motion to intervene. On October 19, 1965, Union presented evidence in support of its application which showed that the estimated plant investment in the six-inch feeder line and related distribution facilities would be $553,300 at the end of 1966, and $662,500 at the end of 1970; that the estimated net operating income from the project would be $8,700 for the calendar year 1966, and $33,800 for the calendar year 1970; that the estimated rate of return would be approximately 5% after the initial 2-year development period; that total revenue from the project was expected to be $130,277 for 1967, the first full year of operation, $47,400 of which would be derived from sales to The Principia; that The Principia is the only present prospective large-use customer in the area and makes the project feasible for Union; that the project is economically feasible, but without such customer, the project is not economically feasible; that no other public utilities provide gas service in the area proposed to be served; that the nearest public utility furnishing gas service to the public in the general vicinity is Illinois Power Company and CIPS; that Illinois Power Company's closest line is approximately 7 miles east of Union's proposed facilities and CIPS's closest line is approximately 12 miles north of Union's proposed facilities; that Union would provide service in accordance with the Commission's General Order No. 159, and in accordance with Union's Schedule of Rates for Gas Service on

file with the Commission, which are the same rates and regulations applicable to gas service in the Alton area; and that 50-year franchises were granted to Union by both the village of Elsah and the city of Grafton. No objection to closing the case was made and the examiner marked the case "heard and taken."

On November 3, 1965, the Commission entered an order granting Union a certificate of public convenience and necessity to serve the Elsah-Grafton area, including The Principia College. In its order the Commission found:

(1) There is a need and demand for the proposed service in the area proposed to be served. (2) Gas service is not presently available to the public in the area. (3) The project is economically feasible. (4) Union has the financial ability to provide the proposed service. (5) Consent has been obtained from the local municipal authorities authorizing the use of the municipal streets and public places by franchises granted to Union. (6) Union will serve the area in accordance with the Commission's General Order No. 159, all applicable codes, and Union's Schedule of Rates for Gas Service on file with the Commission.

No appeal was taken from either the denial of the motion to intervene or the order of November 3.

Following the entry of the November 3 order, Union began construction of the 6-inch feeder main. Installation of pipe was well under way and a total of $43,704 was spent between November 3, 1965, and December 7, 1965, in reliance on the November, 1965, certificate. In all, $66,323 was spent by Union in preparing to render gas service to the Elsah-Grafton area.

On October 18, 1965, one day prior to the scheduled hearing in Union's case in Docket No. 51686, CIPS filed an application in Docket No. 51848 seeking a certificate of convenience and necessity to construct a gas feeder main from Jerseyville to Grafton *via* Elsah and to furnish gas service to the Elsah-Grafton area, The Principia College,

and the unincorporated communities of McClusky, Dow and Newbern along the route of the proposed pipeline. Union was granted leave to intervene in CIPS's case in Docket No. 51848, and the case was set for November 12, 1965.

At the November 12 hearing, CIPS moved to set aside the November 3 order granting a certificate to Union and to consolidate the two proceedings. Union had previously filed another petition for a certificate to serve an additional adjacent area in Docket No. 51899.

On December 7, 1965, the Commission granted CIPS's motion; set aside the November 3 order certifying Union; consolidated the three cases; and set the cause for hearing on January 13, 1966. Thereafter Union applied for a rehearing and CIPS filed its second petition in Docket No. 52058 which covered substantially the same area as Union's second petition, Docket No. 51899.

On January 26, 1966, the Commission granted Union a rehearing and on March 2, 1966, in conference, rescinded their action of December 7 setting aside Union's certificate of November 3. They further ordered that notice be given Union that its certificate granted on November 3, 1965, may be amended or modified and that a hearing would be held on March 16 with respect to such amendments or modifications and that evidence would be taken in support of all four petitions (Docket Nos. 51686, 51848, 51899 and 52058) previously filed.

The hearings were conducted over the objection of Union, and on June 22, 1966, the Commission entered an order granting CIPS a certificate of convenience and necessity to serve Grafton, Elsah, The Principia College, and the largest part of the disputed area. Union's November 3 certificate was "amended" to limit its right to serve a sparsely inhabited area from the east line of The Principia to the west line of Madison County.

Union's petition for rehearing was denied, the trial

court affirmed the Commission, and Union filed this appeal.

Union contends that the proceedings resulting in the order of June 22 were invalid in that they involved a rescission rather than an amendment of its prior certificate and the Commission did not follow the requirements of the Public Utilities Act with respect to such rescission. Union further contends that even if the proceedings were proper, the order of June 22 was not supported by sufficient findings and that the findings were against the manifest weight of the evidence. Union further contends that the order deprived it of its property without due process of law.

Both the Commission and CIPS insist that the proceedings were procedurally correct and that the June 22 order was supported by substantial evidence and sufficient findings of fact.

Section 55 of the Public Utilities Act (Ill. Rev. Stat. 1965, chap. 111⅔, par. 56) provides that certificates of public convenience and necessity "may be altered or modified by the Commission, upon its own motion or upon application by the person or corporation affected."

Section 67 of the Act (Ill. Rev. Stat. 1965, chap. 111⅔, par. 71) provides for modification of decisions and orders and provides in part: "Anything in this Act to the contrary notwithstanding, the Commission may at any time, upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any rule, regulation, order or decision made by it."

We agree with Union that the order of June 22 was a modification or rescission of its certificate governed by section 67 rather than the type of alteration or modification contemplated by section 55. As the court stated in *Blackhawk Motor Transit Co.* v. *Commerce Com.*, 398 Ill. 542, 552-554:

"Counsel entertain different views as to the power the commission may exercise over its certificates of public con-

venience and necessity under section 55. (Ill. Rev. Stat. 1945, chap. 111⅔, par. 56.) The section prohibits any public utility from starting operations before it obtains a certificate from the commission. Subparagraph 4 of the section provides that 'Such certificates may be altered or modified by the Commission, upon its own motion or upon application by the person or corporation affected.' The statute is silent as to the time following the issuance of the certificate within which the power may be exercised. Nor does it contain any requirement of notice, opportunity for hearing or the filing of formal pleadings to raise issues as to the sufficiency of the certificate or the order granting it. The absence of such procedural requirement has a bearing on the extent or scope of the alteration or modification that may be made. The power conferred by section 55 to alter or modify should be compared with the power conferred by section 67 (par. 71) to rescind, alter or amend. The power conferred in the latter section is more comprehensive than that granted by the former statute, for in the latter the power of rescission, alteration or amendment applies to any rule, regulation, order or decision of the commission while in section 55 the power to alter or modify is limited to certificates of public convenience and necessity.

"The power to rescind a certificate is greater in extent and scope than the power to alter or modify. The words 'altered' or 'modified' as used in section 55 are descriptive of the power which the commission may exercise over certificates it has issued. In the search of the section for the extent of the power, the words 'altered' or 'modified' should be given their usual and popular meaning. Webster's Unabridged Dictionary defines 'alter' as meaning 'to change in one or more respects, but not entirely; to make [a thing] different without changing it into something else.' The word 'modify' is defined as meaning 'to change somewhat the form or qualities of; to alter some-

what.' The word 'rescind' means to abrogate, annul, to vacate or set aside. An exercise of the power to rescind may be more destructive of the prior certificate than an exercise of a power to alter or modify. In the light of the difference between the powers conferred by the respective statutes, the General Assembly made provision for procedural requirements in section 67 which are not included in section 55. The power to rescind, alter, or amend under section 67 can be exercised only when there is 'opportunity to be heard as provided in the case of complaints.' Such requirement relates back to section 64, (par. 68) which deals with hearings on complaints. It provides that a written complaint shall be filed with the commission either on its own motion or by any person or corporation. It requires notice to interested parties, an opportunity for hearing and findings of fact sufficient to support the order that is finally entered. Thus by the two sections the General Assembly has preserved a distinction between the extent of the powers the commission may exercise by not requiring complaint, notice, opportunity for hearing and findings of fact in cases where the certificate is to be altered or modified, while providing for such requirements where there is to be a hearing as to the rescission of a certificate, order or decision. *The power granted in section 55 to alter or modify certificates is restricted to such alterations and modifications as are of a minor character and which do not affect substantial rights of the persons or corporation holding the certificate or the rights of any other person or utility.* A public utility acquires an interest in a certificate granted to it and is authorized to act according to its terms. If the proposed action of the commission is to lead to a rescission of the certificate, it is obvious that the exercise of the power of rescission must meet with the rules of due process. The requirement of section 67 that there be opportunity to be heard as in case of complaint and the procedural require-

ments of the section on complaint (section 64) accord with the rules of due process as understood and applied to public utilities." (Emphasis supplied.)

It is patent from the record before us that the so-called "amendment" of Union's certificate was not minor or insubstantial. It is clear that the inclusion of The Principia College in the area to be served was the motivating factor making it desirable for both utilities to enter the field. The Commission found that without The Principia the project would be unfeasible for CIPS, and "may be marginal for Union." As we read the record, the only evidence is that neither utility could economically serve the balance of the disputed area without the inclusion of The Principia. CIPS does not dispute this and indeed felt compelled to argue in its brief that the order of June 22 does not compel Union to furnish any service to the area still covered under its certificate.

We therefore proceed on the basis that the June 22 order effectively rescinded Union's November 3 certificate by rendering it worthless. We must then determine if the Commission was justified in so doing. There is no question but that the order of the Commission on December 7, 1965, rescinding Union's certificate was not in accordance with section 67 and was improper. However, the Commission on rehearing rescinded the December 7 order and its propriety is not now in question.

The Commission and CIPS, however, argue that the June 22, 1966, order properly resulted from hearings pursuant to section 67 and to notice to Union and an opportunity to be heard, and that the order is supported by substantial evidence.

We agree that Union was given notice of the hearings leading to the June 22 order. However, it does not follow that the proceeding here was proper under section 67.

Section 67 provides that a utility must be given an opportunity to be heard as in the case of complaints, thereby

relating back to sections 64 and 65. (Ill. Rev. Stat. 1965, chap. 111⅔, pars. 68, 69.) Section 64 requires a complaint in writing, "setting forth any act or things done or omitted to be done in violation" of the act or order or rule of the Commission. Section 65 requires the Commission to "make and render findings concerning the subject-matter and facts inquired into and enter its order based thereon."

In these proceedings however Union was not charged with any act or omission in violation of the Public Utilities Act or any order, rule or regulation of the Commission. The Commission made no finding relating to any such violation, nor did it find that there were any errors of law or fact in its order of November 3, 1965, granting Union a certificate or that conditions had changed requiring a rescission of that order.

In reality the Commission proceeded as if the original Union certificate never existed and, in effect, proceeded to hear the matter *de novo* as competing petitions from two utilities. This is the very procedure condemned in *Blackhawk Motor Transit Co.* v. *Commerce Com.*, 398 Ill. 542.

While the legislature in establishing a system of utility regulation has recognized that the public interest requires a continuing supervision of operating utilities, it has made no provisions for the rescission of certificates at mere whim or caprice. Reasonable stability of the regulatory process requires that an order granting a certificate of public convenience and necessity upon due notice to interested parties, and not appealed from, ought not be set aside merely because the Commission later prefers a competitor which is concededly about equal in capability to serve.

Here there are no findings that there were any errors of law or fact in the November 3 order, or that facts or circumstances have changed. In the absence of such findings we believe that the Commission was without authority to effectively rescind Union's certificate. *Blackhawk Motor Transit Co.* v. *Commerce Com.*, 398 Ill. 542; *Rockwell*

*Lime Co.* v. *Commerce Com.,* 373 Ill. 309; *Central Northwest Business Men's Ass'n.* v. *Commerce Com.,* 337 Ill. 149; *Chicago Motor Bus Co.* v. *Chicago Stage Co.,* 287 Ill. 320.

CIPS and the Commission, however, argue that no such findings are required, citing *Chicago Housing Authority* v. *Commerce Com.,* 20 Ill.2d 37. We do not so read that decision. That case involved the approval of a revision of a rate structure, and the reasonableness of the new rate rather than the old rate was in issue. It was manifestly unnecessary to find the old rate unreasonable in order to facilitate judicial review.

Upon the record in this case the order of June 27, 1966, was beyond the prerogative of the Commission. (*Blackhawk Motor Transit Co.* v. *Commerce Com.,* 398 Ill. 542.) We, therefore, conclude that the order of June 22, 1966, improperly rescinded Union's certificate of public convenience and necessity.

The judgment of the circuit court is reversed and the cause is remanded with directions to set aside the order of the Illinois Commerce Commision of June 22, 1966.

*Reversed and remanded, with directions.*