THIRD DIVISION
 March 26, 1997

No. 1-96-0745

BOARD OF TRUSTEES OF THE )
BARRINGTON POLICE PENSION FUND, )
 )
 Plaintiff-Appellant, )
 ) APPEAL FROM THE CIRCUIT
 v. ) COURT OF COOK COUNTY.
 )
VILLAGE OF BARRINGTON ETHICS )
BOARD, JAMES CONDILL, VIRGINIA ) HONORABLE LESTER D.
GRIFFITH, LYDIA FRANZ, GLENN ) FOREMAN, JUDGE PRESIDING.
LOAFMAN and DONN BRANSTRATOR, )
its members, )
 )
 Defendants-Appellees. )

 JUSTICE GORDON delivered the opinion of the court:

 The plaintiff, the Board of Trustees of the Barrington
Police Pension Fund (the Pension Fund Trustees), brought this
action against the Village of Barrington Ethics Board and its
members, James Condill, Virginia Griffith, Lydia Franz, Glenn
Loafman and Donn Branstrator (hereinafter collectively referred
to as the Ethics Board), the defendants, seeking declaratory and
injunctive relief. The plaintiff argued that the defendants had
no authority to regulate ethical conduct or to require the
Pension Fund Trustees to file ethics statements. The parties
filed cross-motions for summary judgment, and the trial court
granted summary judgment in favor of the Ethics Board. The
Pension Fund Trustees appeal.
 On appeal, the Pension Fund Trustees raise two issues: 
whether the Illinois Pension Code (the Pension Code) (40 ILCS
5/1-101 et seq. (West 1994)) preempts all local regulation of
pension fund trustees and whether the Barrington ethics ordinance
violates section 3-150 of the Pension Code (40 ILCS 5/3-150 (West
1994)).
 The facts are not in dispute. Article 3 of the Pension Code
(40 ILCS 5/3-101 through 3-152 (West 1994)) provides for the
establishment of a police pension board by each municipality
having a population of 500,000 or less. 40 ILCS 5/3-101 (West
1994). Pursuant to that provision, the Village of Barrington
established the Board of Trustees of the Barrington Police
Pension Board, the plaintiff herein, to administer the pension
fund for the Barrington police officers. That board, and all
other police pension boards governed by Article 3 of the Pension
Code, is comprised of five trustees of which two are appointed by
the mayor or president of the board of trustees of the
municipality, two are elected by the active police officer
participants of the pension fund and one is elected by the
beneficiaries of the pension fund. 40 ILCS 5/3-128 (West 1994). 
In addition to other powers and duties set forth in sections 3-
133 through 3-140.1 of Article 3 of the Pension Code (40 ILCS
3/133 through 3-140.1 (West 1994)), the pension fund trustees
have exclusive authority to control and manage the police pension
fund (40 ILCS 5/3-132 (West 1994)). They also owe fiduciary
duties to the pension fund participants and beneficiaries; can
allocate and delegate their fiduciary duties as provided in the
Pension Code; and are prohibited from engaging in certain
designated transactions involving conflicts of interest. 40 ILCS
5/1-109, 1-109.1, 1-109.2, 1-110 (West 1994). See 40 ILCS 5/3-
149 (making provisions of Article 1 applicable to Article 3). 
Those prohibited transactions include the sale, exchange or lease
of property; the loaning of money; and the furnishing of goods,
services or facilities from the pension fund to a party in
interest for less than adequate consideration or from the party
in interest to the pension fund for more than adequate
consideration. 40 ILCS 5/1-110(a) (West 1994). Pension fund
trustees also are prohibited from dealing with the assets of the
pension fund for their own interest; from receiving consideration
for their personal accounts from any party dealing with the
pension fund; and from acting on behalf of any party whose
interests are adverse to the pension fund in a transaction
involving the pension fund. 40 ILCS 5/1-110(b) (West 1994).
 The Village of Barrington Ethics Board, the defendant, is an
entity created by municipal ordinance to administer Barrington's
Code of Ethics applicable to all Barrington public officials,
elected or appointed, who were not employed by that village. The
Ethics Board is empowered to hold hearings, consider evidence,
and make findings and recommendations to the Village of
Barrington Board of Trustees regarding alleged violations of the
ethics code. Based upon those recommendations, the Village could
direct the filing of administrative or legal proceedings for the
purpose of imposing fines and/or removal of public officials from
office. Barrington Village Code, ch. 2, art. XIV, 2-195, 2-
196, 2-199 (1993).
 Briefly summarized, the thrust of the Code of Ethics for the
Village of Barrington created under the ethics ordinance is to
avert conflicts of interest in public officials who come within
its scope. Accordingly, it contains various prohibitions against
advancing the personal, private and/or financial interests of the
public official or others. It prohibits the use of public
property for the public official's personal convenience or
profit. It forbids remuneration to the public official or a
family member from persons doing or seeking to do business with
the village and forbids the public official from having any
financial interest in any contract, work or business of the
village. The ethics code also forbids the disclosure of
confidential information concerning the village; the
representation of private interests before any village agency;
the private employment of the public official in a capacity that
is incompatible with the discharge of his duties as a public
official; and remuneration to the public official for appearances
on behalf of the Village. It requires the disclosure of any
financial interests in proposed legislation or other matters that
the Village Board of Trustees could reasonably be expected to
consider.
 The Barrington ethics ordinance also requires that
Barrington public officials file annual disclosure statements. 
In that statement the public official is required to acknowledge
(1) receipt of a copy of the Barrington Code of Ethics; (2) an
obligation to read that document; (3) that he or she is subject
to the provisions of the Code of Ethics; and (4) that he or she
is in compliance with the Code of Ethics (and/or to state the
extent of noncompliance). The public official must also make and
certify all disclosures required by the Code of Ethics.
 On October 12, 1995, a written complaint was filed with the
Barrington Ethics Board against Ken Greffin, a trustee for the
Board of Trustees of the Barrington Police Pension Fund, alleging
that he had failed to file a disclosure statement as required by
the Barrington Ethics ordinance. The Ethics Board set the matter
for hearing on December 1, 1995. On November 27, 1995 the Board
of Trustees of the Barrington Police Pension Fund filed a
complaint for declaratory judgment and injunctive relief. The
Pension Fund Trustees sought a declaration that the Illinois
Pension Code is the exclusive regulatory legislation for pension
funds and that the defendants could not regulate the conduct of
pension fund trustees through the enactment of the Barrington
Ethics ordinance. The complaint also sought to enjoin the
defendants from exercising any jurisdiction over the Pension Fund
Trustees.
 Cross-motions for summary judgment were filed by each of the
parties. After hearing, the court granted defendants' motion for
summary judgment finding that the Barrington Ethics Board could
enforce the Barrington ethics ordinance against the Pension Fund
Trustees.
 A motion for summary judgment should be granted when "the
pleadings, depositions and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law." 735 ILCS 5/2-1005(c) (West 1994); Soderlund
Brothers v. Carrier Corp., 278 Ill. App. 3d 606, 663 N.E.2d 1
(1995). Appellate review of an order granting summary judgment
is de novo. E.g., Deloney v. Board of Education, 281 Ill. App.
3d 775, 666 N.E.2d 792 (1996); Hesselink v. R.L. Perlow Corp.,
265 Ill. App. 3d 473, 637 N.E.2d 575 (1994). In reviewing that
ruling, the appellate court must consider anew the facts and law
related to the case and determine whether the trial court was
correct. Shull v. Harristown Township, 223 Ill. App. 3d 819, 585
N.E.2d 1164 (1992).
 The plaintiff contends that the Illinois Pension Code
preempts the Barrington ethics ordinance and renders it
unenforceable. See Lilly Lake Road Defenders v. County of
McHenry, 156 Ill. 2d 1, 619 N.E.2d 137 (1993) (when a statute or
ordinance is preempted, the subordinate legislative body's
enactment is suspended and rendered unenforceable by the
existence of the superior legislative body's enactment). In
support of this contention, the plaintiff relies upon the
following cases in which preemption was found to exist based upon
the legislature's adoption of a comprehensive scheme of
regulation: Village of Bolingbrook v. Citizens Utilities Co.,
231 Ill. App. 3d 740, 597 N.E.2d 246 (1992); Kirwin v. Peoples
Gas Light & Coke Co., 173 Ill. App. 3d 699, 528 N.E.2d 201
(1988); Hutchcraft Van Service, Inc. v. Urbana Human Relations
Comm'n, 104 Ill. App. 3d 817, 433 N.E.2d 329 (1982); and Illinois
Liquor Control Comm'n v. City of Joliet, 26 Ill. App. 3d 27, 324
N.E.2d 453 (1975). Those cases held that where the legislature
has not specifically limited or denied a governmental power to a
home rule unit, the courts must determine whether the
legislature intended to preempt the area as evidenced by the
adoption of a comprehensive scheme of regulation.
 The cases cited by the plaintiff are no longer the law of
this State. The appellate court case of Village of Bolingbrook,
231 Ill. App. 3d 740, 597 N.E.2d 246, has been reversed by our
supreme court in Village of Bolingbrook v. Citizens Utility Co.,
158 Ill. 2d 133, 632 N.E.2d 1000 (1994)); and, in that reversal,
the court specifically declined to adopt the holding in Illinois
Liquor Control Comm'n v. City of Joliet that "'exclusivity ***
may be expressed *** by enactment of a comprehensive regulatory
scheme.'" Village of Bolingbrook, 158 Ill. 2d at 138, 632 N.E.2d
at 1002 citing Illinois Liquor Control Comm'n, 26 Ill. App. 3d at
32, 324 N.E.2d at 455. The supreme court cited to the home rule
provisions in sections 6(h) and (i) of article VII of the
Illinois Constitution of 1970 which state in pertinent part:
 "(h) The General Assembly may provide specifically by
 law for the exclusive exercise by the State of any
 power or function of a home rule unit ***.
 (i) Home rule units may exercise and perform
 concurrently with the State any power or function of a
 home rule unit to the extent that the General Assembly
 by law does not specifically limit the concurrent
 exercise or specifically declare the State's exercise
 to be exclusive." Ill. Const. 1970, art. VII, 6(h),
 (i).
 In accordance with those provisions, the supreme court stated:
 "We believe the language of section 6(h) is clear. In
 order to meet the requirements of section 6(h),
 legislation must contain express language that the area
 covered by the legislation is to be exclusively
 controlled by the State. [Citations.] It is not
 enough that the State comprehensively regulates an area
 which otherwise would fall into home rule power." 158
 Ill. 2d at 138, 632 N.E.2d at 1002.
 See Congress Care Center Associates v. Chicago Department of
Health, 260 Ill. App. 3d 586, 588, 632 N.E.2d 266, 268 (1994)
(stating that section 6(i)
 "favors concurrent exercises of power by the State and
 home rule units and places almost exclusive reliance on
 the legislature rather than the courts to limit the
 home rule units' exercise of their authority. Scadron
 [v. City of Des Plaines] (1992), 153 Ill. 2d 164, 606
 N.E.2d 1154, quoting [Baum, A Tentative Survey of
 Illinois Home Rule: Powers and Limitations (pt. 2),]
 1972 U. Ill. L. F. [559,] 579.")
 The Village of Bolingbrook court applied these principles to
the Public Utility Act (Ill. Rev. Stat. 1991, ch. 111 2/3, par.
1-101 et seq. now at 220 ILCS 5/1-101 et seq. (West 1994)) which
had a stated policy that "public utilities *** be regulated
effectively and comprehensively" (Ill. Rev. Stat. 1991, ch. 111
2/3, par. 1-102 now at 220 ILCS 5/1-102 (West 1994)). Village of
Bolingbrook, 158 Ill. 2d 133, 632 N.E.2d 1000. Notwithstanding
that language, the court found that the Public Utility Act did
not contain express language of exclusivity so as to preempt
concurrent regulation by the home rule unit.
 In the instant case, even if Article 3 of the Pension Code
is deemed to be comprehensive, as the plaintiff contends, that
fact would be extraneous since preemption analysis requires that
the statute specifically provide for the exclusive exercise of
authority by the State. Manifestly, Article 3 does not purport
to make itself the exclusive regulatory scheme with respect to
police pension funds so as to come within the supreme court's
holding in Village of Bolingbrook, 158 Ill. 2d 133, 632 N.E.2d
1000.
 The plaintiff would contend that section 3-132 of Article 3
specifically grants exclusive power to the board of trustees for
the police pension fund. 40 ILCS 5/3-132 (West 1994) (the powers
and duties of the board include "[t]o control and manage,
exclusively, the pension fund ***") (emphasis added). However,
the exclusive grant of authority to the pension fund board under
section 3-132 is limited to the board's power to perform the acts
designated in Article 3 such as to pay pensions and other
benefits; to draw and invest funds; to pay expenses; to keep
records; to make rules; and to accept donations. E.g., 40 ILCS
5/3-133, 3-135, 3-138, 3-140, 3-140.1 (West 1994). See Benton
Police Department v. Illinois Human Rigths Comm'n, 160 Ill. App.
3d 55, 513 N.E.2d 29 (1987) (police pension board has exclusive
authority to deny reinstatement to police officer); Board of
Trustees of Police Pension Fund v. Illinois Human Rights Comm'n,
141 Ill. App. 3d 447, 490 N.E.2d 232 (1986) (police pension board
has exclusive authority over issues of eligibility to participate
in the police pension fund). No other provision in Article 3 of
the Pension Code contains express language of exclusivity. 
Neither section 1-109 nor section 1-110 of the Code, made
applicable to Article 3 and which govern the pension fund
trustees' fiduciary duties and ethical obligations with respect
to conflicts of interests, purport to be exclusive.
 Moreover, several other sections of the Pension Code
expressly allow for the exercise of concurrent home rule power. 
See Hutchcraft, 104 Ill. App. 3d at 823, 433 N.E.2d at 333 ("if
the examination [of the statute] reveals an intent to preempt
only pro tanto, so much of the subject matter as is not covered
by the state scheme of regulation remains within the government
and affairs of the home rule unit and it may legislate
concurrently with the state to that extent"). Section 3-101 of
the Pension Code authorizes each municipality to "establish and
administer a police pension fund. (Emphasis added.)" 40 ILCS
5/3-101 (West 1994). Section 22-501.1 of the Pension Code states
that "[r]ules and regulations made by the Division [Public
Employee Pension Fund Division] pursuant to this Section shall
govern where conflict with local rules and regulations exists. 
(Emphasis added.)" 40 ILCS 5/22-501.1 (West 1994). These
provisions either explicitly or implicitly establish a
legislative intent to allow municipalities to promulgate rules
and regulations with respect to police pension funds. Thus,
given the legislature's failure to specifically grant exclusive
authority to the State over all aspects of police pension funds
or to specifically exclude home rule authority to regulate the
fiduciary conduct of pension fund trustees; and given the
legislature's allowance of home rule units to "administer" police
pension funds and promulgate local rules and regulations; and
given the clear constitutional guidelines limiting traditional
preemption (see Village of Bolingbrook, 158 Ill. 2d 133, 632
N.E.2d 1000), we do not find that promulgation of ethical
standards by the Village of Barrington was preempted by the
Pension Code. As a result, the regulation of ethical conduct by
the pension board can be achieved concurrently by State and
municipal legislation. See Ill. Const. 1970, art. VII, 6(i).
 Plaintiff also argues that, even if the Barrington ethics
ordinance is not preempted by the Pension Code, it nevertheless
violates section 3-150 of that Code. That section provides in
pertinent part:
 "A home rule unit, as defined in Article VII of the
 1970 Illinois Constitution or any amendment thereto,
 shall have no power to change, alter, or amend in any
 way the provisions of this Article." 40 ILCS 5/3-150
 (West 1994).
 The plaintiff argues that the Barrington ethics ordinance
changes, alters and amends the Pension Code by prohibiting
conduct by the Pension Fund Trustees not prohibited by the
Pension Code and by requiring the trustees to file annual
disclosure statements.
 In accordance with rules of statutory construction, the
intent of the legislature must be ascertained and given effect;
and the most reliable indicator of legislative intent is the
language of the statute. E.g., In re S.G., No. 80688 (Ill.
February 20, 1997); Mitsuuchi v. City of Chicago, 125 Ill. 2d
489, 532 N.E.2d 830 (1988). Words of a statute are to be given
their common and popular meaning unless to do so defeats the
manifest intent of the legislature. E.g., Collins v. Board of
Trustees of Firemen's Annuity & Benefit Fund, 155 Ill. 2d 103,
610 N.E.2d 1250 (1993); Black Hawk Motor Transit Co. v. Illinois
Commerce Comm'n, 398 Ill. 542, 76 N.E.2d 478 (1947); DiMarco v.
City of Chicago, 278 Ill. App. 3d 318, 662 N.E.2d 525 (1996).
 Section 3-150 of the Pension Code prohibits the change or
modification of existing statutory provisions. See Union
Electric Co. v. Illinois Commerce Comm'n, 39 Ill. 2d 386, 235
N.E.2d 604 (1968) (to alter is to change in one or more respects
but not entirely); Morris v. Broadview, Inc., 328 Ill. App. 267,
65 N.E.2d 605 (1946) (amend and alter are in general use and
their meaning is not uncertain; each means to change). See
generally Webster's Third New International Dictionary 373 (1993)
(defining change as "to make different in some particular but
short of conversion into something else: alter, modify"). Here,
the ethical ordinance reiterates certain of the prohibitions of
ethical conduct already contained in the Pension Code and
enumerates additional acts of prohibited conduct not encompassed
in that Code. Thus, if anything, the provisions of the ethics
ordinance complement rather than modify or change the regulatory
provisions of the Pension Code.
 Plaintiff's reliance on Board of Trustees of Niles Police
Pension Fund v. Department of Insurance, 218 Ill. App. 3d 782,
578 N.E.2d 1102 (1991), is misplaced. In that case, the
municipality created a police pension board comprised of trustees
in excess of the number provided by statute. Here, as the
municipality did not enact an ordinance that was contrary to or
inconsistent with the terms of the statute, it did not violate
the home rule prohibition of section 3-150 of the Pension Code.
 For the foregoing reasons, the judgment of the Circuit Court
of Cook County is affirmed.
 Affirmed.
 COUSINS, Jr., P.J. and CAHILL, J., concur.