(No. 24665.—

THE CITY OF CHICAGO, Appellee, *vs.* THE HASTINGS EXPRESS COMPANY *et al.* Appellants.

*Opinion filed October 13, 1938—Rehearing denied Dec. 8, 1938.*

KAMFNER, HALLIGAN & MARKS, (EDWIN A. HALLIGAN, and SAMUEL M. LANOFF, of counsel,) for appellants.

BARNET HODES, Corporation Counsel, (DAVID LEFKO- VITS, and J. HERZL SEGAL, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from the municipal court of Chicago to review a judgment of that court finding appellants guilty of the violation of section 2063 of the municipal ordinances of the city of Chicago, hereinafter referred to as the "wheel tax" ordinance, and assessing a fine of $25. The trial judge has certified that the validity of a municipal ordinance is involved and that, in his opinion, the cause should be appealed directly to this court.

The facts as stipulated are, in substance, that the defendant the Hastings Express Company, a corporation, is authorized by its charter to engage in the business of a public utility in the transportation of property for hire. Its principal office is located in the city of Chicago. It is engaged both in interstate and intrastate commerce as a motor carrier of property, both in the city of Chicago and between that city and other cities, in this and other States, within a

radius of forty miles of the city. It has no office, terminal or garage in any other municipality through which it operates. Shipments originating outside of Illinois are billed direct to it and are picked up by its motor vehicles at various railroad freight terminals and delivered to the consignees according to shipper's instructions. Shipments of a local nature are picked up within the city and taken to the defendant's terminal at its office and there sorted according to runs and transported to their destination. All motor vehicles of the defendant use the streets of the city of Chicago either in the pick-up or delivery service. The defendant operates under a certificate of convenience and necessity issued by the Illinois Commerce Commission authorizing it to transport property in either direction between Chicago and one hundred forty-five other cities, villages and towns, over routes specified in the order.

The "wheel tax" ordinance, under which proceedings were had against the defendants, in effect requires that all persons residing within the city who use, either personally or by their agents or employees, any motor vehicle upon the streets, shall pay a license fee. The ordinance is attacked on the ground that the city is without power to impose a wheel tax upon motor vehicles engaged in pick-up and delivery service in the city of Chicago, and from that city to other municipalities, where such vehicles are used as instruments of a public utility, and even though it be held that such power was ever given to cities, the Public Utilities act has removed such power from them and vested it solely in the Illinois Commerce Commission.

It is a rule in this State, so frequently announced as to require no citation of cases so announcing, that a municipal corporation has no inherent power but has only such power as is granted to it by the General Assembly. The power of a city to impose a wheel tax upon resident owners of motor vehicles, including public utilities, must be expressly granted or necessarily implied or incident to powers

expressly granted. (*Bullman* v. *City of Chicago*, 367 Ill. 217.) The appellee, the city of Chicago, contends that the General Assembly has granted to cities and villages full power to impose a wheel tax upon all resident owners of vehicles, including public utilities; that this power is given by the Cities and Villages act and the Motor Vehicle act, and that the Public Utilities act has not withdrawn such power so granted.

The Cities and Villages act (Ill. Rev. Stat. 1937, chap. 24, sec. 96, par. 65.95) gives to municipalities the power "to direct, license, and control all wagons and other vehicles * * * and any such city or village having a population of 40,000 or over may appropriate monies annually from such license fees for the construction, maintenance and operation of testing stations for the inspection of equipment of motor vehicles in such cities or villages as authorized by section 21c of the 'Motor Vehicle act'." The balance of such fees is, by that act, to be used for maintaining and repairing streets and public roadways in the cities and for no other purpose. Section 26a of the Motor Vehicle act, (Ill. Rev. Stat. 1937, chap. 95½, par. 32a,) declares that no owner of a motor vehicle who shall have obtained a certificate from the Secretary of State and have paid the registration fee required, shall be required by any city, village or town, or other municipal corporation other than that in which he resides, to pay any tax or license fee for the use of such motor vehicle, and that no owner other than of motor-driven commercial vehicles and those used for hire, shall be required to pay more than the license fee as in the act limited.

The power and authority of cities to assess and collect a wheel tax has been upheld by this court in *Harder's Storage Co.* v. *City of Chicago*, 235 Ill. 58, and *Ayres* v. *City of Chicago*, 239 id. 237. In *Roe* v. *City of Jacksonville*, 319 Ill. 215, it was held that section 26 of the Motor Vehicle act, which is substantially the same as the present

section 26a, applied alike to vehicles driven for pleasure and for hire.

Appellants concede that, as a general rule, a city council has power to impose a wheel tax upon the right or privilege of operating motor vehicles on the streets of that city, but they contend that the provisions of the Motor Vehicle act and the Cities and Villages act, combined, do not empower the city of Chicago to license a public utility engaged in transportation for hire, operating under a certificate of convenience and necessity authorized by the Public Utilities act; that section 26a, referring to motor-drawn and motor-driven commercial vehicles, and motor vehicles which are used for public hire, does not include, in specific language, a common carrier or person operating under a permit issued by the Illinois Commerce Commission, and as all doubts must necessarily be resolved against the municipality, it must be held that the power to tax common carriers is lacking. And, further, if such power was given it was later taken away by the Public Utilities act.

Recourse to other provisions of the Motor Vehicle act discloses that section 2 of that act classifies motor vehicles into two divisions; (1) those designed and used for the carrying of not more than seven persons, and, (2) those designed and used for pulling or carrying freight and also those designed and used for the carrying of more than seven persons. Section 9 of the act, imposing a license fee on the owner of vehicles in the second division, refers to those motor vehicles which are designed or equipped or used for carrying freight, goods, wares or merchandise. These are classified into groups according to their gross weight. Section 21c (par. 26a) specifies the requirements affecting motor vehicles as regards safety glass. It is there provided: "In addition, in case the person violating this section is a common carrier or person operating under a permit issued by the Illinois Commerce Commission, any court in which such person is convicted may direct the Illinois Commerce

Commission to revoke or suspend such permit until such person satisfactorily complies with the provisions of this section."

From the language of these sections, when considered with the Cities and Villages act, the legislative intent to include common carriers and persons operating under a permit of the Illinois Commerce Commission in the term "motor vehicles" is apparent. As cities are, by those acts, empowered to assess a wheel tax on motor vehicles without limitation as to use to which they are put, it follows that cities may require resident common carriers to pay a license fee on each motor vehicle using the streets, unless, as contended by appellants, this power was, by implication, taken away by the Public Utilities act.

This court is committed to the rule that the General Assembly, by the creation of the Illinois Commerce Commission, and the powers given it over public utilities by the Public Utilities act, withdrew from municipalities all regulatory power over the instrumentalities of a public utility or the public utility business. *City of Geneseo* v. *Illinois Northern Utilities Co.* 363 Ill. 89; *Chicago Motor Coach Co.* v. *City of Chicago,* 337 id. 200; *City of Chicago* v. *Alton Railroad Co.* 355 id. 65; *City of Chicago* v. *Chicago Great Western Railroad Co.* 348 id. 193.

The question here is whether the Public Utilities act, by implication, has withdrawn from the cities the right to require a wheel tax or license fee from the motor vehicles engaged as a public utility. This question is to be approached with the rule in mind that repeal by implication is not favored, and that it is only where there is a clear repugnance between two acts, and the provisions of both cannot be carried into effect, that the later law must prevail. *Kizer* v. *City of Mattoon,* 332 Ill. 545; *People* v. *Burke,* 313 id. 576.

That the "wheel tax" ordinance before us is not a regulatory ordinance but a revenue ordinance seems too clear

to admit of doubt. No regulation is imposed, no examination required, no tests are applied and no inquiries other than those affecting ownership need be answered. While the ordinance refers to the "issuance of a license" it is clear, as was said in *Ayres* v. *City of Chicago, supra,* "it is used as equivalent to 'tax,' and the issuing of a license to the owner of a vehicle under such ordinance is, in effect, no more than giving a receipt for the annual tax which he has paid. * * * There is nothing in the ordinance that purports to regulate the manner of equipping or operating a motor vehicle." Nor is it a tax upon the business, since the character of the business has nothing to do with the assessment of a wheel tax. The line of demarcation, as pointed out in *City of Chicago* v. *Alton Railroad Co. supra,* lies between such matters as are "an intimate part of and of the closest connection with the public utility service and transportation itself," on the one hand, which are within the exclusive jurisdiction of the Commerce Commission, and on the other hand those matters which in nowise interfere with or overlap such control by the Commerce Commission. It was in that case held that ownership of property by a public utility is not, itself, sufficient to justify a holding that the Public Utilities act had repealed the police powers of the cities and villages in which such property is located. In those cases, such as the *Chicago Motor Coach Co. case,* where the enforcement of an ordinance requiring a grant of privilege to use motor buses on the streets of the city was held beyond the power of the city, and *City of Chicago* v. *Chicago Great Western Railroad Co. supra,* where the question involved the power of the city to enforce a scale-inspection ordinance, and in like cases, this court has held that the Public Utilities act gave the Commerce Commission sole power to act, and the city was without power to exercise regulation or control over utilities. It will be observed that the use of the streets is not made dependent upon payment of the wheel tax, nor does a re-

fusal to pay such tax result in a denial of the use of the streets or affect the regulation of the business of the utility, but is penalized by a fine.

Cases cited by the appellants involved a regulation of the utility, its instrumentalities or its business. We are of the opinion that such is not the character of the "wheel tax" ordinance and that there is no overlapping of authority in its operation. It is purely a revenue measure to obtain funds for the building, repair and maintenance of streets and alleys. It applies to all residents of the city operating motor vehicles of whatever kind or character.

The argument is made that, since the city is authorized to expend a portion of the wheel tax for the operation of testing stations, the ordinance indicates an attempt to regulate motor vehicles by such testing. There is no ordinance providing compulsory inspection or testing. Appellee concedes that inspection is regulation and that the city has no power to regulate. The issuance of wheel tax licenses or receipts, however, does not depend upon a consent to inspection and indeed there is nothing in the ordinance requiring an inspection, though it is apparent that if the appellants desire the use of such inspection station there is nothing to prohibit their having it.

We are of the opinion that the city of Chicago, having been given power by the Cities and Villages act and the Motor Vehicle act to impose a wheel tax on all motor vehicles of residents of such city, which power has not been taken away by the Public Utilities act, the ordinance in question here is valid, and the judgment of the municipal court is affirmed.

*Judgment affirmed.*