HUTCHCRAFT VAN SERVICE, INC., Petitioner-Appellee, *v.* THE CITY OF URBANA HUMAN RELATIONS COMMISSION *et al.*, Respondents-Appellants.

Fourth District   No. 17418

---

Opinion filed March 11, 1982.—Rehearing denied April 13, 1982.

Jack Waaler, Corporation Counsel, of Champaign, for appellants.

Glenn A. Stanko, of Reno, O'Byrne & Kepley, of Champaign, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

This appeal raises a question which has not as yet been entirely resolved under the law of this State: To what extent, if any, may a home-rule unit legislate beyond that which has theretofore also been the object of statutory enactment by the legislature?

The factual matters are not in serious dispute. The City of Urbana (Urbana) purporting to act under its home-rule power, enacted an amended ordinance entitled "An Ordinance on Human Rights" (ordinance), the relevant portions of which are read as follows:

## "ARTICLE 1. PURPOSE

*Sec. 1. Intent*

It is the intent of the City of Urbana, in adopting this ordinance, to secure an end, in the City of Urbana, to discrimination, including, but not limited to, discrimination by reason of race, color, creed, class, national origin, religion, sex, age, marital status, physical and mental handicap, personal appearance, sexual preference, family responsibilities, matriculation, political affiliation, prior arrest or conviction record or source of income. * * *

## ARTICLE 2. DEFINITIONS
* * *

*Sec. 3. Definitions*

Discrimination. Any practice or act which is unlawfully based wholly or partially on the race, color, creed, class, national origin, religion, sex, age, marital status, physical or mental handicap, personal appearance, sexual preference, family responsibilities, matriculation, political affiliation, prior arrest or conviction record or source of income of any individual.
* * *

Personal appearance. The outward appearance of any person, irrespective of sex, with regard to bodily condition or characteristic such as weight, height, facial features, or other aspects of appearance. It shall not relate, however, to the requirement of cleanliness, uniforms, or prescribed attire, if and when such requirement is uniformly applied for admittance to a public accommodation or to employees in a business establishment for a reasonable business purpose.
* * *

## ARTICLE 4. DISCRIMINATION IN EMPLOYMENT
*Sec. 5. Discrimination by an employer*

It shall be an unlawful practice for an employer to do any of the following acts for a reason based wholly or partially on discrimination: to fail or refuse to hire * * * any person with respect to his/her application, hiring * * *.
* * *

## ARTICLE 9. GENERAL PROVISIONS
* * *

*Sec. 26. Exceptions*

(a) Any practice or act of discrimination which would otherwise be prohibited by this Ordinance shall not be deemed unlawful if it can be established that such practice or act can be justified on the basis of being reasonably necessary to the normal operation of the business or enterprise. However, a 'business necessity' exception shall not be justified by the factors of increased cost to business, business efficiency, the comparative or stereotypical characteristics of one group as opposed to another or the preference of co-workers, employers' customers or any other person."

Horlbeck, one of the respondents, inquired about employment with the petitioner and was denied a job application. The evidence was that the refusal was based upon the length of Horlbeck's hair. However, the evidence was in conflict as to the reason for petitioner's objection.

Horlbeck claimed discrimination because of personal appearance; petitioner's witness claimed it was because of business image, safety, and customer preference. Petitioner runs a moving business and has been in business in Urbana for 34 years. It is affiliated with a national moving company and obtains about one-half of its business from Chanute Air Force Base.

Horlbeck filed a complaint for discrimination under the ordinance and after administrative proceedings and hearings before the City of Urbana Human Relations Commission, that body issued a cease-and-desist order requiring petitioner to cease from denying job applications based on length of hair and to furnish evidence of compliance within 30 days. Petitioner caused the administrative order to be reviewed by the circuit court of Champaign County by writ of *certiorari*. That court vacated and set aside the order on the basis that the employment discrimination provisions of the ordinance did not pertain to the government and affairs of the City of Urbana and were unconstitutional under Ill. Const. 1970, art. VII, §6(a). Urbana appeals that order.

The basic grant of home-rule power is found in that section which is read as follows:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, §6(a).

Section 6(m) of article VII mandates that this home-rule power is to be liberally construed, and the supreme court has held that the basic grant in section 6(a) was purposely left without definition so that home-rule powers might be construed as being broad in nature. *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 367 N.E.2d 692.

To define the problem presented, we must examine several legislative and constitutional enactments and contrast them with the Urbana ordinance. An examination of the ordinance reveals that it facially prohibits discrimination on account of "race, color, creed, class, national origin, religion, sex, age, marital status, physical or mental handicap, personal appearance, sexual preference, family responsibilities, matriculation, political affiliation, prior arrest or conviction record or source of income."

On the other hand the legislative and constitutional enactments prohibit discrimination on a lesser number of factors.

A brief examination of the pertinent language in the applicable statutes will be helpful. Prior to July 1, 1980, discrimination in employment was governed by the Fair Employment Practices Act (FEPA) (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*). On that date the Illinois Human

Rights Act (IHRA) (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—101 *et seq.*) became effective and repealed FEPA. The purpose of IHRA was to draw together and consolidate in a single act all Illinois law relating to discrimination in employment, real estate transactions, access to financial credit, and availability of public accommodations. (Davis & Murphey, *The Illinois Human Rights Act: Revision of Illinois Law Concerning Discrimination in Employment*, 69 Ill. B.J. 218 (1980).) Section 9—102 of IHRA (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 9—102) contains a saving clause as to pending matters. Therefore, even though the discrimination alleged in the instant case occurred prior to July 1, 1980, and the complaint was in process at that time, it will still be governed by the provisions of IHRA. A comparison of the language of the FEPA and IHRA is instructive.

Section 1 of FEPA states in part:

"[I]t is declared to be the public policy of this State that without in any way precluding any employer from selecting between persons of equal merit, ability, and capabilities, equal employment opportunity or apprenticeship opportunity without discrimination because of race, color, religion, sex, national origin, ancestry, physical or mental handicap unrelated to ability, or unfavorable discharge from military service should be protected by State law." Ill. Rev. Stat. 1979, ch. 48, par. 851.

Section 3(a) of FEPA defines an unfair employment practice to be:

"For any employer, because of the race, color, religion, sex, national origin, ancestry or physical or mental handicap unrelated to ability of an individual, or an unfavorable discharge from military service, to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment; or * * *." Ill. Rev. Stat. 1979, ch. 48, par. 853(a).

The IHRA largely mirrors the language of FEPA. Section 1—102(A) of IHRA states the public policy of the State to be:

"To secure for all individuals within Illinois the freedom from discrimination because of race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations." Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—102(A).

Unlawful discrimination under IHRA is defined in section 1—103(Q) as:

" 'Unlawful discrimination' means discrimination against a per-

son because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, handicap or unfavorable discharge from military service as those terms are defined in this Section." Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—103(Q).

Of equal, if not more, significance is section 17 of the Bill of Rights to the 1970 Illinois Constitution, which states:

> "All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the hiring and promotion practices of any employer or in the sale or rental of property.
>
> These rights are enforceable without action by the General Assembly, but the General Assembly by law may establish reasonable exemptions relating to these rights and provide additional remedies for their violation." Ill. Const. 1970, art. I, §17.

To digest the foregoing, it will be observed that FEPA prohibited as factors in discrimination race, color, religion, sex, national origin, ancestry, physical or mental handicap, and unfavorable military discharge. IHRA retained all of these *in haec verba* and added age and marital status. The Bill of Rights is more restrictive, containing the same factors as FEPA minus physical or mental handicap and unfavorable military discharge. It is thus immediately apparent that the Urbana ordinance is much broader in scope and includes a variety of factors not found in either the statutes or the constitution, one of which, personal appearance, is the issue here. The problem posed, as first mentioned above, is whether in the face of an act by the legislature a home-rule unit may legislate further and different restrictions on the same subject matter.

The entire subject of home-rule has proved to be a fertile ground for controversy. One school of thought holds that home-rule power is almost without limitation and the resulting fragmentation is necessarily incident to it. (Compare statement of Chairman Parkhurst to the Constitutional Convention at 4 Proceedings 3044, quoted in *Illinois Liquor Control Com. v. City of Joliet* (1975), 26 Ill. App. 3d 27, 35, 324 N.E.2d 453.) On the other hand, it has been maintained that home-rule is not without limit and the only questions are how extensive the limitation should be and who should apply it, the legislature or the courts. (See Mr. Justice Underwood's concurrence in *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 517, 389 N.E.2d 553.) If the legislature has taken specific action as provided in paragraphs (g), (h), (i), (j), or (k) of section 6 of article VII of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §§6(g), (h), (i), (j), and (k)), or as provided in section 7 of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1979, ch. 1, par. 1106), no problem arises.

If, however, a statute does not contain specific provisions limiting or denying home-rule power, whether through oversight or otherwise, a court is then called upon to examine the entire statute and to divine the legislative intent. Ordinary rules of statutory interpretation then apply with all intendments and implications therefrom favoring home-rule.

■■ The constitutional provision for home-rule quoted above (Ill. Const. 1970, art. VII, §6(a)) is cast in terms of the government and affairs of the home-rule unit. If the subject matter can be found to be within the ambit of the government and affairs of the home-rule unit, then power exists within that unit to legislate on the matter. The method of arriving at that decision is not spelled out in detail, but we believe that it must begin with an examination under the rule of preemption.

Preemption is a judicially created doctrine and is more commonly found in decisions grappling with the problem of a Federal statute versus a State enactment. As applied to State action versus local action, preemption means that where the legislature has adopted a scheme for regulation of a given subject, local legislative control over such phases of the subject as are covered by State regulation ceases. *Alta-Dena Dairy v. County of San Diego* (1969), 271 Cal. App. 2d 66, 76 Cal. Rptr. 510.

Thus, if a critical examination of the statute reveals an intent by the legislature to preempt the subject *in toto*, it is no longer within the government and affairs of the home-rule unit. By the same token, if the examination reveals an intent to preempt only *pro tanto*, so much of the subject matter as is not covered by the State scheme of regulation remains within the government and affairs of the home-rule unit, and it may legislate concurrently with the State to that extent. The third alternative would be a situation in which there exists no State legislative action at all. In such a case, no question of preemption could arise, and the home-rule unit is free to exercise its plenary constitutional power to legislate.

The latter situation was presented in *Illinois Liquor Control Com. v. City of Joliet* (1975), 26 Ill. App. 3d 27, 324 N.E.2d 453. In that case the conflict arose over a State statute setting the minimum drinking age at 19, while the home-rule unit had set it at 21. No specific limitation was spelled out in the State statute, but the court found that a broad residuum of power over the liquor industry in local governments was found throughout the statute, and the court therefore concluded that concurrent powers rested with the legislature and with the local governments.

In *City of Joliet* the court made a significant observation that "we agree with plaintiff that exclusivity may be expressed in other ways, notably by enactment of a comprehensive regulatory scheme, or by establishment of a State agency for the purpose of a comprehensive regulatory scheme [citations]." 26 Ill. App. 3d 27, 32, 324 N.E.2d 453, 456.

In applying these principles to the instant case, we would be hard-put to envision a more comprehensive statutory scheme than that contained in the Illinois Human Rights Act. It would be equally difficult to say that the Human Rights Commission created by the statute is a powerless creature. It possesses the power to receive complaints and hold hearings, to compel the attendance of witnesses, and to request judicial enforcement of its orders. Its powers to grant relief and to impose penalties are lengthy and awesome.

■■ The delegation of power, unlike *City of Joliet*, is limited. Section 7—108(A) of IHRA (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—108(A)) permits local governments to create, if they wish, local commissions, but those local commissions are authorized only "to promote the purposes of this Act and to secure for all individuals within the jurisdiction of the politicial subdivision or subdivisions freedom from unlawful discrimination." The purposes of the Act and the delineation of freedom from unlawful discrimination are clearly and precisely set forth in section 1—102(A) reproduced above. There is no general warrant to local governments to create commissions with powers and duties beyond the scope of section 1—102(A).

Respondents here seize upon the word "jurisdiction" in section 7—108, particularly in section 7—108(B) (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—108(B)) referring to "concurrent jurisdiction" as an indication that the local governments had free rein. We do not agree. The concept of "jurisdiction" as here used means "venue." Even assuming *arguendo* that section 7—108 is a full delegation of powers and duties, even the Human Rights Commission itself as created under the Act is bound by the scope of section 1—102(A).

■■ We conclude that by enacting IHRA the legislature has preempted the subject of freedom from unlawful discrimination and that insofar as the Urbana ordinance attempts a broader scope than that set forth in section 1—102(A) of IHRA, it is not permissible. Accordingly, the order of the circuit court of Champaign County is affirmed.

Affirmed.

MILLS and LONDRIGAN, JJ., concur.