THE VILLAGE OF BOLINGBROOK, Plaintiff-Appellant, v. CITIZENS UTILITIES COMPANY OF ILLINOIS, Defendant-Appellee.

Third District   No. 3—91—0750

Opinion filed July 24, 1992.

BARRY, P.J., dissenting.

Norma J. Guess, Barry L. Moss, and George A. Marchetti, all of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

Thomas R. Wilson, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Village of Bolingbrook (Village), filed multiple ordinance violations against Citizens Utilities Company of Illinois (Citizens), alleging the illegal discharge of untreated sewage. The trial court dismissed the complaints when it found the Village's public health ordinances were preempted by the Illinois Public Utilities Act (Utilities Act) (Ill. Rev. Stat. 1989, ch. 111⅔, par. 1—101 et seq.). The Village appeals and we affirm.

Citizens is a public utility which provides water and sewer service to the Village. Between April 9 and April 15, 1991, Citizens discharged untreated sewage from its plant onto property located in the Village. The Village, a home rule municipality, filed 22 complaints against Citizens for repeatedly violating ordinance 24—200 ("Unlawful Placement of Waste Prohibited") and 20 complaints for the violation of ordinance 24—201 ("Unlawful Discharge into Natural Outlet").

Citizens moved to dismiss all complaints on the basis that the Utilities Act preempted the Village from enforcing its public health ordinances. The trial court agreed and granted Citizens' motion to dismiss.

The Village maintains that it is authorized by the General Assembly to prohibit Citizens' illegal discharge of untreated sewage pursuant to: (1) the Village's general police powers (Ill. Rev. Stat. 1989, ch. 24, par. 11—1—1); (2) the Village's ability to regulate offensive matter and prevent pollution within the municipality (Ill. Rev. Stat. 1989, ch. 24, par. 11—80—10); (3) the Village's ability to enact ordinances for the promotion of health or the suppression of diseases (Ill. Rev. Stat. 1989, ch. 24, pars. 1—2—1, 11—20—5); and (4) the Village's ability to prevent and abate nuisances (Ill. Rev. Stat. 1989, ch. 24, par. 11—60—2).

The Utilities Act was enacted by the General Assembly and intended to govern the operation of all public utilities within the State of Illinois. (Ill. Rev. Stat. 1989, ch. 111⅔, par. 1—102.) Section 1—102 of the Utilities Act provides in pertinent part:

> "Findings and Intent. The General Assembly finds that the health, welfare and prosperity of all Illinois citizens require the provision of adequate, efficient, reliable, environmentally safe and least-cost public utility services at prices which accurately reflect the long-term cost of such services and which are equi-

table to all citizens. It is therefore declared to be the policy of the State that public utilities shall continue to be regulated effectively and comprehensively." Ill. Rev. Stat. 1989, ch. 111⅔, par. 1—102.

The Illinois Commerce Commission was specifically created by the General Assembly and authorized to supervise and regulate *all* public utilities within the State of Illinois. (Ill. Rev. Stat. 1989, ch. 111⅔, par. 4—101.) According to section 4—101 of the Utilities Act:

> *"The Commission shall have general supervision of all public utilities,* \*\*\* shall inquire into the management of the business thereof and shall keep itself informed as to the manner and method in which the business is conducted. It shall examine those public utilities and keep informed as to their general condition, their franchises, capitalization, rates and other charges, and the manner in which their plants, equipment and other property owned, leased, controlled or operated are managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service *but also with respect to their compliance with this Act and any other law*, with the orders of the Commission and with the charter and franchise requirements." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 111⅔, par. 4—101.

The term "public utility" encompasses every corporation or business which owns or operates any (utility) plant which provides sewerage disposal. (Ill. Rev. Stat. 1989, ch. 111⅔, par. 3—105.) Citizens is a public utility as defined by the statute because it provides sewage disposal and related services to individuals and businesses located in the Village.

A "home rule unit" is a municipality which "may exercise any power or perform any function pertaining to its governmental affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." (Ill. Const. 1970, art. VII, §6(a).) Home rule municipalities are granted broad and imprecise powers. This requires the courts of our State to determine whether a power exercised by a home rule municipality is within the scope of the powers granted by article VII, section 6(a), of the Illinois Constitution. *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 338 N.E.2d 15.

The validity of any municipal ordinance depends upon whether the municipality has been granted the appropriate governmental power by article VII, section 6(a), of the Illinois Constitution of 1970. (*Kirwan v. Peoples Gas Light & Coke Co.* (1988), 173 Ill. App. 3d 699, 528 N.E.2d 201.) If the General Assembly has *not* specifically limited or

denied a governmental power to a home rule unit, then the courts *must* determine whether the legislature intended to preempt the area of authority which is the subject of the municipal ordinance. *Hutchcraft Van Service, Inc. v. City of Urbana Human Relations Comm'n* (1982), 104 Ill. App. 3d 817, 433 N.E.2d 329.

Preemption occurs when the courts determine that the General Assembly has adopted a method of regulation covering the same subject matter that a municipality is also attempting to regulate. *Hutchcraft Van Service, Inc.*, 104 Ill. App. 3d at 823, 433 N.E.2d at 333.

The Illinois General Assembly has *not* specifically prohibited home rule units of local government from regulating public utilities. (*Kirwan*, 173 Ill. App. 3d 699, 528 N.E.2d 201.) However, the General Assembly has conferred upon the Illinois Commerce Commission the power and authority to comprehensively regulate *all* public utilities within this State. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 4—101.) When the Utilities Act expressly empowers the Illinois Commerce Commission with a specific regulatory authority, any similar regulatory power vested in a municipality becomes *ineffective. City of Geneseo v. Illinois Northern Utilities Co.* (1941), 378 Ill. 506, 39 N.E.2d 26.

In *City of Peoria v. Peoria Water Co.* (1977), 49 Ill. App. 3d 1066, 364 N.E.2d 1003, the trial court dismissed the City of Peoria's complaint for specific performance on the ground that the city's attempt to regulate water main extensions was preempted by the Utilities Act. The City sought to compel the local utility to provide water main extensions pursuant to their existing franchise. Our court upheld the trial court's dismissal. We found that neither the City's municipal ordinances nor the parties' franchise could limit the Illinois Commerce Commission's authority to regulate the local utility. Therefore, the court found that the City of Peoria could not compel the local utility to provide water main extensions without receiving specific authority to do so from the Illinois Commerce Commission. By our opinion in the instant appeal, we reaffirm the doctrine of preemption as set forth in *City of Peoria.*

The alleged discharge of untreated sewage by Citizens is a matter of concern not only to the residents of the Village, but also to the people of the State of Illinois. The regulation and general supervision of all public utilities in this State have been solely and specifically vested in the Illinois Commerce Commission by the Utilities Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 4—101 *et seq.*). The general regulation of public utilities by the Illinois Commerce Commission has been, since 1913, a matter of statewide, not local, concern. *Kirwan*, 173 Ill. App. 3d at 705, 528 N.E.2d at 203.

We find from our review of the record that the Utilities Act grants to the Illinois Commerce Commission regulatory control over Citizens' operation of its sewerage service and preempts such regulation by the Village. However, we note that our holding in no way precludes local Village regulation over public utility matters which do not interfere with or overlap the regulatory authority of the Illinois Commerce Commission. (*City of Chicago v. Hastings Express Co.* (1938), 369 Ill. 610, 17 N.E.2d 576.) Our opinion does not preclude municipal regulation of the nonintegral public activities and facilities of a local utility. See *City of Chicago v. Alton R.R. Co.* (1933), 355 Ill. 65, 188 N.E. 831.

For the reasons indicated, the Illinois Commerce Commission has exclusive regulatory jurisdiction granted by the Utilities Act over the operation of Citizens' public utility sewage system and service. The trial court acted properly when it dismissed the Village's ordinance violation complaints against Citizens pursuant to the doctrine of preemption.

Accordingly, the circuit court of Will County is affirmed.

Affirmed.

SLATER, J., concurs.

PRESIDING JUSTICE BARRY, dissenting:

Contrary to my colleagues, I find nothing in the Utilities Act expressing a legislative intent to preempt the local ordinances here at issue enacted pursuant to the Village's police power and in the interest of public health.

Specifically, the ordinances provide:

"Section 24—200. *Unlawful Placement of Waste Prohibited.*

It shall be unlawful for any person to place, deposit, or permit to be deposited in any unsanitary manner on public or private property within the Village, or on any area under the jurisdiction of the Village, any human or animal excrement, garbage or other objectionable waste.

Section 24—201. *Unlawful Discharge Into Natural Outlet.*

It shall be unlawful to discharge to any natural outlet within the Village, or in any area under the jurisdiction of the Village, any sewage or other polluted waters, except where suitable treatment has been provided in accordance with subsequent provisions of this Chapter." Village of Bolingbrook, Ill., Public Health Ordinance §§24—200, 24—201.

In my opinion, these ordinances are entirely compatible with and complementary to the intent of the Utilities Act to grant authority to the Commission to oversee and regulate the day-to-day business operations of public utilities.

Section 1—102 of the Utilities Act clearly refers to the regulation of *rates* charged by public utilities and expresses the intent to comprehensively control those rates. Section 4—101, consistent with the stated purpose of the Act, authorizes the Commission to supervise the *business* of public utilities and to *keep informed* as to their compliance with other laws. Section 4—201 authorizes "the Commission to see that the provisions of the Constitution and statutes of this State affecting public utilities, the enforcement of which is not specifically vested in some other officer or tribunal, are enforced and obeyed, and that violations thereof are promptly prosecuted and penalties due the State therefor recovered and collected." (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 4—201.) Finally, section 4—205 provides that "suit for the recovery of one penalty shall not be a bar to or affect the recovery of any other penalty or be a bar to any criminal prosecution against any public utility." (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 4—205.) Read together, these sections of the Utilities Act evince a legislative intent to grant comprehensive regulatory control of the business aspects of public utilities to the Illinois Commerce Commission (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 4—101) and to retain the right of the State (*e.g.*, the Environmental Protection Agency) and any other body politic, person or corporation to prosecute claims based on criminal and civil liability (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 4—205). See *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 478, 29 N.E.2d 1014, 1017 ("[T]here [is] nothing in the [Utilities Act] giving the Commerce Commission authority to determine liability growing out of a discontinuance of service").

The proper test for determining whether a matter lies within the exclusive jurisdiction of the Commerce Commission or may be acted upon by a municipality was stated in *City of Chicago v. Hastings Express Co.* (1938), 369 Ill. 610, 615, 17 N.E.2d 576, 578. The court there prefaced its analysis with the observation that "repeal [of a municipal ordinance] by implication is not favored, and that it is only where there is a clear repugnance between two acts, and the provisions of both cannot be carried into effect, that the later law [the Utilities Act] must prevail." At issue in *City of Chicago* was the validity of a revenue ordinance requiring a wheel tax or licence fee from motor vehicles engaged as a public utility. The court tested the ordinance by the standard set forth in *City of Chicago v. Alton R.R. Co.* (1933),

355 Ill. 65, 73, 188 N.E. 831, 834: "The line of demarcation *** lies between such matters as are 'an intimate part of and of the closest connection with the public utility service and transportation itself,' on the one hand, which are within the exclusive jurisdiction of the Commerce Commission, and on the other hand those matters which in nowise interfere with or overlap such control by the Commerce Commission." (*City of Chicago v. Hastings Express Co.* (1938), 369 Ill. 610, 616.) The court found that inasmuch as the wheel tax ordinance did not involve "regulation of the utility, its instrumentalities or its business," the ordinance was a valid exercise of the city's taxing authority. 369 Ill. at 617, 17 N.E.2d at 579.

In similar fashion, by my view, the local ordinances here at issue do not limit or interfere with the Commission's authority to supervise and regulate the business operations of the public utility. The ordinances are a reasonable exercise of the home rule municipality's police power for the protection of public health. They do not require the utility to expand its services or meet higher standards than are otherwise required by the Utilities Act or the Commerce Commission. They merely prohibit the unsanitary dumping of animal and human excrement, etc., on public and private property and the discharge of raw sewage into the Village's natural outlets. I fail to see how these ordinances impede or overlap the Commission's regulation of the defendant's services.

Unlike *City of Peoria*, the ordinances here do not purport to affect the business of the utility by imposing additional services for the benefit of a local entity that may not be required statewide. In *City of Peoria* the city entered into an agreement with the public utility water company granting the city the power to compel main extensions. On review we found a direct conflict between the Utilities Act's grant of authority to the Commission respecting utility extensions (Ill. Rev. Stat. 1975, ch. 111⅔, par. 50) and the franchise agreement.

In *City of Peoria* we cited with approval *City of Chicago v. Illinois Commerce Comm'n* (1934), 356 Ill. 501, 510, 190 N.E. 896, 900. That case concerned a city ordinance originally enacted in 1911 which required railroad companies to make certain elevations of their tracks and to construct subways. In 1914, the Utilities Act was enacted, and it granted to the Illinois Commerce Commission exclusive jurisdiction over all phases of grade crossing regulation, including the power to apportion costs and to determine the manner of constructing grade crossings (Ill. Rev. Stat. 1933, ch. 111⅔, par. 62). The legislature had expressed its specific intent to grant control over the subject matter in question to the Commerce Commission. Thus, the court ruled that,

as of the effective date of the Utilities Act, the city lost power to enforce its ordinance: "Neither municipal franchise ordinances which have been accepted and acted upon by grantee utility companies, nor municipal regulatory ordinances passed under legislative authority, can stand in the way of the lawful exercise, by the Commerce Commission, of the regulatory police powers conferred upon it by the General Assembly." *City of Chicago*, 356 Ill. at 510.

Here, the majority points to no specific provision in the Utilities Act which grants to the Commerce Commission exclusive jurisdiction to regulate the discharge of raw sewage. In my opinion the Utilities Act does not preempt the ordinances and poses no impediment to the Village's court action against the public utility defendant.

I would reverse the judgment of the circuit court of Will County and remand this action for further proceedings.