BOARD OF TRUSTEES OF THE BARRINGTON POLICE PENSION FUND, Plaintiff-Appellant, v. THE VILLAGE OF BARRINGTON ETHICS BOARD *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—96—0745

Opinion filed March 26, 1997.

Richard J. Puchalski, of Sklodowski, Franklin, Puchalski & Reimer, of Chicago, for appellant.

Timothy P. Dwyer, of Ottosen, Sinson, Trevarthen & Britz, of Wheaton, for appellees.

JUSTICE GORDON delivered the opinion of the court:

The plaintiff, the Board of Trustees of the Barrington Police Pension Fund (the Pension Fund Trustees), brought this action against the Village of Barrington Ethics Board and its members, James Con-

dill, Virginia Griffith, Lydia Franz, Glenn Loafman and Donn Branstrator (hereinafter collectively referred to as the Ethics Board), the defendants, seeking declaratory and injunctive relief. The plaintiff argued that the defendants had no authority to regulate ethical conduct or to require the Pension Fund Trustees to file ethics statements. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of the Ethics Board. The Pension Fund Trustees appeal.

On appeal, the Pension Fund Trustees raise two issues: whether the Illinois Pension Code (the Pension Code) (40 ILCS 5/1—101 *et seq.* (West 1994)) preempts all local regulation of pension fund trustees and whether the Barrington ethics ordinance violates section 3—150 of the Pension Code (40 ILCS 5/3—150 (West 1994)).[1]

The facts are not in dispute. Article 3 of the Pension Code (40 ILCS 5/3—101 through 3—152 (West 1994)) provides for the establishment of a police pension board by each municipality having a population of 500,000 or less. 40 ILCS 5/3—103 (West 1994). Pursuant to that provision, the Village of Barrington established the Board of Trustees of the Barrington Police Pension Board, the plaintiff herein, to administer the pension fund for the Barrington police officers. That board, and all other police pension boards governed by article 3 of the Pension Code, is comprised of five trustees of which two are appointed by the mayor or president of the board of trustees of the municipality, two are elected by the active police officer participants of the pension fund and one is elected by the beneficiaries of the pension fund. 40 ILCS 5/3—128 (West 1994). In addition to other powers and duties set forth in sections 3—133 through 3—140.1 of article 3 of the Pension Code (40 ILCS 5/3—131 through 3—140.1 (West 1994)), the pension fund trustees have exclusive authority to control and manage the police pension fund (40 ILCS 5/3—132 (West 1994)). They also owe fiduciary duties to the pension fund participants and beneficiaries; can allocate and delegate their fiduciary duties as provided in the Pension Code; and are prohibited from engaging in certain designated transactions involving conflicts of interest. 40 ILCS 5/1—109, 1—109.1, 1—109.2, 1—110 (West 1994). See 40 ILCS 5/3—149 (making provisions of article 1 applicable to article 3). Those prohibited transactions include the sale, exchange or lease of property; the loaning of money; and the furnishing of goods, services or facilities from the pension fund to a party in interest for less than adequate consideration or from the party in interest to the pension

---

[1]By leave of court and in support of the preemption argument, an *amicus curiae* brief was filed by the Illinois Public Pension Fund Association.

fund for more than adequate consideration. 40 ILCS 5/1—110(a) (West 1994). Pension fund trustees also are prohibited from dealing with the assets of the pension fund for their own interest; from receiving consideration for their personal accounts from any party dealing with the pension fund; and from acting on behalf of any party whose interests are adverse to the pension fund in a transaction involving the pension fund. 40 ILCS 5/1—110(b) (West 1994).

The Village of Barrington Ethics Board, the defendant, is an entity created by municipal ordinance to administer Barrington's code of ethics applicable to all Barrington public officials, elected or appointed, who were not employed by that village. The Ethics Board is empowered to hold hearings, consider evidence, and make findings and recommendations to the Village of Barrington Board of Trustees regarding alleged violations of the ethics code. Based upon those recommendations, the village could direct the filing of administrative or legal proceedings for the purpose of imposing fines and/or removal of public officials from office. Barrington Village Code, ch. 2, art. XIV, §§ 2—195, 2—196, 2—199 (1993).

Briefly summarized, the thrust of the code of ethics for the Village of Barrington created under the ethics ordinance is to avert conflicts of interest in public officials who come within its scope. Accordingly, it contains various prohibitions against advancing the personal, private and/or financial interests of the public official or others. It prohibits the use of public property for the public official's personal convenience or profit. It forbids remuneration to the public official or a family member from persons doing or seeking to do business with the village and forbids the public official from having any financial interest in any contract, work or business of the village. The ethics code also forbids the disclosure of confidential information concerning the village; the representation of private interests before any village agency; the private employment of the public official in a capacity that is incompatible with the discharge of his duties as a public official; and remuneration to the public official for appearances on behalf of the village. It requires the disclosure of any financial interests in proposed legislation or other matters that the village board of trustees could reasonably be expected to consider.

The Barrington ethics ordinance also requires that Barrington public officials file annual disclosure statements. In that statement the public official is required to acknowledge (1) receipt of a copy of the Barrington code of ethics; (2) an obligation to read that document; (3) that he or she is subject to the provisions of the code of ethics; and (4) that he or she is in compliance with the code of ethics (and/or to state the extent of noncompliance). The public official

must also make and certify all disclosures required by the code of ethics.

On October 12, 1995, a written complaint was filed with the Barrington Ethics Board against Ken Greffin, a trustee for the Board of Trustees of the Barrington Police Pension Fund, alleging that he had failed to file a disclosure statement as required by the Barrington ethics ordinance. The Ethics Board set the matter for hearing on December 1, 1995. On November 27, 1995, the Board of Trustees of the Barrington Police Pension Fund filed a complaint for declaratory judgment and injunctive relief. The Pension Fund Trustees sought a declaration that the Illinois Pension Code is the exclusive regulatory legislation for pension funds and that the defendants could not regulate the conduct of pension fund trustees through the enactment of the Barrington ethics ordinance. The complaint also sought to enjoin the defendants from exercising any jurisdiction over the Pension Fund Trustees.

Cross-motions for summary judgment were filed by each of the parties. After hearing, the court granted defendants' motion for summary judgment, finding that the Barrington Ethics Board could enforce the Barrington ethics ordinance against the Pension Fund Trustees.

●1 A motion for summary judgment should be granted when "the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994); *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 663 N.E.2d 1 (1995). Appellate review of an order granting summary judgment is *de novo*. *E.g., Deloney v. Board of Education*, 281 Ill. App. 3d 775, 666 N.E.2d 792 (1996); *Hesselink v. R.L. Perlow Corp.*, 265 Ill. App. 3d 473, 637 N.E.2d 575 (1994). In reviewing that ruling, the appellate court must consider anew the facts and law related to the case and determine whether the trial court was correct. *Shull v. Harristown Township*, 223 Ill. App. 3d 819, 585 N.E.2d 1164 (1992).

The plaintiff contends that the Illinois Pension Code preempts the Barrington ethics ordinance and renders it unenforceable. See *Lilly Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 619 N.E.2d 137 (1993) (when a statute or ordinance is preempted, the subordinate legislative body's enactment is suspended and rendered unenforceable by the existence of the superior legislative body's enactment). In support of this contention, the plaintiff relies upon the following cases in which preemption was found to exist based upon the legislature's adoption of a comprehensive scheme of regula-

tion: *Village of Bolingbrook v. Citizens Utilities Co.*, 231 Ill. App. 3d 740, 597 N.E.2d 246 (1992); *Kirwin v. Peoples Gas Light & Coke Co.*, 173 Ill. App. 3d 699, 528 N.E.2d 201 (1988); *Hutchcraft Van Service, Inc. v. Urbana Human Relations Comm'n*, 104 Ill. App. 3d 817, 433 N.E.2d 329 (1982); and *Illinois Liquor Control Comm'n v. City of Joliet*, 26 Ill. App. 3d 27, 324 N.E.2d 453 (1975). Those cases held that where the legislature has not specifically limited or denied a governmental power to a home rule unit,[2] the courts must determine whether the legislature intended to preempt the area as evidenced by the adoption of a comprehensive scheme of regulation.

■ The cases cited by the plaintiff are no longer the law of this state. The appellate court case of *Village of Bolingbrook*, 231 Ill. App. 3d 740, 597 N.E.2d 246, has been reversed by our supreme court in *Village of Bolingbrook v. Citizens Utility Co.*, 158 Ill. 2d 133, 632 N.E.2d 1000 (1994); and, in that reversal, the court specifically declined to adopt the holding in *Illinois Liquor Control Comm'n v. City of Joliet* that " 'exclusivity *** may be expressed *** by enactment of a comprehensive regulatory scheme.' " *Village of Bolingbrook*, 158 Ill. 2d at 138, 632 N.E.2d at 1002, quoting *Illinois Liquor Control Comm'n*, 26 Ill. App. 3d at 32, 324 N.E.2d at 455. The supreme court cited to the home rule provisions in sections 6(h) and (i) of article VII of the Illinois Constitution of 1970, which state, in pertinent part:

"(h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit ***.

(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(h), (i).

In accordance with those provisions, the supreme court stated:

"We believe the language of section 6(h) is clear. In order to meet the requirements of section 6(h), legislation must contain express language that the area covered by the legislation is to be exclusively controlled by the State. [Citations.] It is not enough that the State comprehensively regulates an area which otherwise would fall into home rule power." 158 Ill. 2d at 138, 632 N.E.2d at 1002.

---

[2]In accordance with article VII of the Illinois Constitution of 1970, a municipality with a population of more than 25,000 is a home rule unit. Ill. Const. 1970, art. VII, § 6(a). The plaintiff does not dispute and in fact contends in its argument below that the Village of Barrington is a home rule unit (287 Ill. App. 3d at 621).

See *Congress Care Center Associates v. Chicago Department of Health*, 260 Ill. App. 3d 586, 588, 632 N.E.2d 266, 268 (1994), which states that section 6(i)

> "favors concurrent exercises of power by the State and home rule units and places almost exclusive reliance on the legislature rather than the courts to limit the home rule units' exercise of their authority. *Scadron [v. City of Des Plaines]*, 153 Ill. 2d [164,] 188[, 606 N.E.2d 1154 (1992)], quoting [D. Baum, *A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, and Intergovernmental Conflict*, 1972 U. Ill. L.F. 559, 579]."

The *Village of Bolingbrook* court applied these principles to the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—101 *et seq.* (now 220 ILCS 5/1—101 *et seq.* (West 1994))), which had a stated policy that "public utilities *** be regulated effectively and comprehensively" (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—102 (now 220 ILCS 5/1—102 (West 1994))). *Village of Bolingbrook*, 158 Ill. 2d 133, 632 N.E.2d 1000. Notwithstanding that language, the court found that the Public Utilities Act did not contain express language of exclusivity so as to preempt concurrent regulation by the home rule unit.

■ In the instant case, even if article 3 of the Pension Code is deemed to be comprehensive, as the plaintiff contends,[3] that fact would be extraneous since preemption analysis requires that the statute specifically provide for the exclusive exercise of authority by the state. Manifestly, article 3 does not purport to make itself the exclusive regulatory scheme with respect to police pension funds so as to come within the supreme court's holding in *Village of Bolingbrook*, 158 Ill. 2d 133, 632 N.E.2d 1000.

The plaintiff would contend that section 3—132 of article 3 specifically grants exclusive power to the board of trustees for the police pension fund. 40 ILCS 5/3—132 (West 1994) (the powers and duties of the board include "[t]o control and manage, *exclusively*, the pension fund") (emphasis added). However, the exclusive grant of authority to the pension fund board under section 3—132 is limited to the board's power to perform the acts designated in article 3, such as to pay pensions and other benefits, to draw and invest funds, to

---

[3]The defendants argue that the Pension Code is not comprehensive and all-encompassing because additional State regulation of the pension fund trustees exists under the Illinois Governmental Ethics Act (5 ILCS 420/4A—101(h) (West 1994)). In accordance with that statute, the appointed pension fund trustees are required to file verified written statements of economic disclosure (see 5 ILCS 420/4A—103 (West 1994)).

pay expenses, to keep records, to make rules, and to accept donations. *E.g.*, 40 ILCS 5/3—133, 3—135, 3—138, 3—140, 3—140.1 (West 1994). See *City of Benton Police Department v. Illinois Human Rights Comm'n*, 160 Ill. App. 3d 55, 513 N.E.2d 29 (1987) (police pension board has exclusive authority to deny reinstatement to police officer); *Board of Trustees of the Police Pension Fund v. Illinois Human Rights Comm'n*, 141 Ill. App. 3d 447, 490 N.E.2d 232 (1986) (police pension board has exclusive authority over issues of eligibility to participate in the police pension fund). No other provision in article 3 of the Pension Code contains express language of exclusivity. Neither section 1—109 nor section 1—110 of the Code, made applicable to article 3 and which govern the pension fund trustees' fiduciary duties and ethical obligations with respect to conflicts of interests, purports to be exclusive.

Moreover, several other sections of the Pension Code expressly allow for the exercise of concurrent home rule power. See *Hutchcraft*, 104 Ill. App. 3d at 823, 433 N.E.2d at 333 ("if the examination [of the statute] reveals an intent to preempt only *pro tanto*, so much of the subject matter as is not covered by the State scheme of regulation remains within the government and affairs of the home-rule unit, and it may legislate concurrently with the State to that extent"). Section 3—101 of the Pension Code authorizes each municipality to "establish and *administer* a police pension fund." (Emphasis added.) 40 ILCS 5/3—101 (West 1994). Section 22—501.1 of the Pension Code states that "[r]ules and regulations made by the Division [Public Employee Pension Fund Division] pursuant to this Section shall govern where *conflict with local rules and regulations* exists." (Emphasis added.) 40 ILCS 5/22—501.1 (West 1994). These provisions either explicitly or implicitly establish a legislative intent to allow municipalities to promulgate rules and regulations with respect to police pension funds. Thus, given the legislature's failure to specifically grant exclusive authority to the state over all aspects of police pension funds or to specifically exclude home rule authority to regulate the fiduciary conduct of pension fund trustees and given the legislature's allowance of home rule units to "administer" police pension funds and promulgate local rules and regulations and given the clear constitutional guidelines limiting traditional preemption (see *Village of Bolingbrook*, 158 Ill. 2d 133, 632 N.E.2d 1000), we do not find that promulgation of ethical standards by the Village of Barrington was preempted by the Pension Code. As a result, the regulation of ethical conduct by the pension board can be achieved concurrently by state and municipal legislation. See Ill. Const. 1970, art. VII, § 6(i).

■ Plaintiff also argues that, even if the Barrington ethics ordinance is not preempted by the Pension Code, it nevertheless violates section 3—150 of that code. That section provides in pertinent part:

"A home rule unit, as defined in Article VII of the 1970 Illinois Constitution or any amendment thereto, shall have no power to change, alter, or amend in any way the provisions of this Article." 40 ILCS 5/3—150 (West 1994).

The plaintiff argues that the Barrington ethics ordinance changes, alters and amends the Pension Code by prohibiting conduct by the Pension Fund Trustees not prohibited by the Pension Code and by requiring the trustees to file annual disclosure statements.

In accordance with rules of statutory construction, the intent of the legislature must be ascertained and given effect; and the most reliable indicator of legislative intent is the language of the statute. *E.g., In re S.G.*, 175 Ill. 2d 471 (1997); *Mitsuuchi v. City of Chicago*, 125 Ill. 2d 489, 532 N.E.2d 830 (1988). Words of a statute are to be given their common and popular meaning unless to do so defeats the manifest intent of the legislature. *E.g., Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 610 N.E.2d 1250 (1993); *Black Hawk Motor Transit Co. v. Illinois Commerce Comm'n*, 398 Ill. 542, 76 N.E.2d 478 (1947); *DiMarco v. City of Chicago*, 278 Ill. App. 3d 318, 662 N.E.2d 525 (1996).

Section 3—150 of the Pension Code prohibits the change or modification of existing statutory provisions. See *Union Electric Co. v. Illinois Commerce Comm'n*, 39 Ill. 2d 386, 235 N.E.2d 604 (1968) (to alter is to change in one or more respects but not entirely); *Morris v. Broadview, Inc.*, 328 Ill. App. 267, 65 N.E.2d 605 (1946) (amend and alter are in general use and their meaning is not uncertain; each means to change). See generally Webster's Third New International Dictionary 373 (1986) (defining "change" as "to make different in some particular but short of conversion into something else: ALTER, MODIFY"). Here, the ethical ordinance reiterates certain of the prohibitions of ethical conduct already contained in the Pension Code and enumerates additional acts of prohibited conduct not encompassed in that Code. Thus, if anything, the provisions of the ethics ordinance complement rather than modify or change the regulatory provisions of the Pension Code.

Plaintiff's reliance on *Board of Trustees of the Niles Police Pension Fund v. Department of Insurance*, 218 Ill. App. 3d 782, 578 N.E.2d 1102 (1991), is misplaced. In that case, the municipality created a police pension board comprised of trustees in excess of the number

provided by statute.[4] Here, as the municipality did not enact an ordinance that was contrary to or inconsistent with the terms of the statute, it did not violate the home rule prohibition of section 3—150 of the Pension Code.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and CAHILL, J., concur.

---

[4]The case of *Board of Trustees of the Niles Police Pension Fund v. Department of Insurance*, 218 Ill. App. 3d 782, 578 N.E.2d 1102 (1991), cited by the plaintiff, is further distinguishable because the home rule prohibition embodied in section 3—150 of the Pension Code (40 ILCS 5/3—150 (West 1994)) was not applied. That provision was not in force when the Niles police pension board was created with nine members rather than the statutory requirement of five members (see Ill. Rev. Stat. 1985, ch. 108$^{1}/_{2}$, par. 3—128 (now 40 ILCS 5/3—128 (West 1994))).